UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------------ x

DWAYNE KINTE ROBERTSON,

                                                           Plaintiff,

                     -against-                              **07 CV 1416 (JG) (LB)**

OFFICER MATTHEW SULLIVAN, Shield #29723;
OFFICER NILES PRINCE, Shield #22353; and
SERGEANT DIMITRI DAGLAS, Shield #01647,

                                              Defendants.

------------------------------------------------------------------------ x

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTIONS *IN LIMINE*

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................1

POINT I

EVIDENCE OF PLAINTIFF'S PRIOR AND SUBSEQUENT
FELONY AND MISDEMEANOR ARRESTS AND/OR
CONVICTIONS IS RELEVANT AND ADMISSIBLE ...................................................... 2

    A.   Plaintiff's Felony Conviction Within the Past 10 Years
is Admissible.................................................................................... 2

    B.   Plaintiff's  Prior Arrest and Conviction Within Ten
Years for Offenses that Constitute *Crimen Falsi* Are
Admissible as they Relate to His Credibility.................................... 3

    C.   Plaintiff's Felony and Misdemeanor Convictions and/or
Arrests Are All Admissible Under F.R.E. 404(b)............................. 4

    D.   Plaintiff's Prior and Subsequent Criminal History
Should Be Admissible as it is Relevant to His
Credibility. ........................................................................................ 4

    E.   Plaintiff's Prior and Subsequent Experiences as an
Arrestee and Convicted Individual Are Relevant to
Plaintiff's Claims for Damages......................................................... 7

    F.   Plaintiff's March 21, 2006 and May 11, 2006 Arrests
Must Be Admitted............................................................................. 8

POINT II

DEFENDANTS SHOULD BE PERMITTED TO INTRODUCE
EVIDENCE THAT PLAINTIFF WAS ON PAROLE ON APRIL
14, 2006, INCLUDING HIS PAROLE FILE...................................................... 9

POINT III

PLAINTIFF HAS NO VIABLE CLAIM FOR MALICIOUS
PROSECUTION .......................................................................................... 11

**Page**

POINT IV

DEFENDANTS SHOULD BE PERMITTED TO INTRODUCE
EVIDENCE OF PLAINTIFF'S MEDICAL AND
PSYCHOLOGICAL HISTORY AND RECORDS FROM ALL OF
HIS MEDICAL PROVIDERS ............................................................................ 14

    A.    Plaintiff's Psychiatric History ........................................................... 14

    B.    Plaintiff's (Physical) Medical History.. ........................................... 16

POINT V

TASHA RICKS SHOULD BE PRECLUDED FROM
TESTIFYING ................................................................................................... 17

POINT VI

PLAINTIFF FAILED TO PRESERVE PHOTOGRAPHS OF HIS
ALLEGED INJURIES AND THEREFORE DEFENDANTS ARE
ENTITLED TO AN ADVERSE INFERENCE CHARGE ................................. 18

POINT VII

PLAINTIFF SHOULD BE PRECLUDED FROM MENTIONING
OR OFFERING ANY EVIDENCE OF CCRB COMPLAINTS OR
OTHER CIVIL RIGHTS CLAIMS AGAINST THE
DEFENDANTS ................................................................................................ 19

POINT VIII

PLAINTIFF'S PHOTOGRAPHS OF THE SCENE AND MAP OF
THE VICINITY OF THE INCIDENT SHOULD BE PRECLUDED .............................. 20

POINT IV

PLAINTIFF'S CONFIDENTIALITY DESIGNATIONS ARE
IMPROPER ...................................................................................................... 22

POINT X

DEFENDANT CITY OF NEW YORK SHOULD BE REMOVED
FROM THE CAPTION OF THE CASE AND PLAINTIFF
SHOULD BE PRECLUDED FROM MENTIONING THAT THE
CITY WAS EVER A DEFENDANT OR THAT THE
ATTORNEYS ARE "CITY ATTORNEYS" .................................................... 24

**Page**

POINT XI

    PLAINTIFF SHOULD BE PRECLUDED FROM OFFERING
    EVIDENCE OF THE CITY'S POTENTIAL INDEMNIFICATION
    OF DEFENDANT POLICE OFFICERS ........................................................................... 25


CONCLUSION ........................................................................................................................ 26

## PRELIMINARY STATEMENT

Plaintiff Dwayne Robertson, by his attorney Cravath Swaine & Moore LLP, brings this action against defendants Matthew Sullivan, Niles Prince and Dimitri Deglas, pursuant to 42 U.S.C. § 1983, alleging violations of his federal civil rights pursuant to 42 U.S.C. § 1983 and state law. Specifically, plaintiff alleges, *inter alia*, that he was falsely arrested, subjected to excessive force and maliciously prosecuted during and following his arrest on or about April 14, 2006.

This matter is scheduled to go to trial before the Honorable John Gleeson on March 1, 2010. Defendants, by their attorney, Michael A. Cardozo, Corporation Counsel of the City of New York, respectfully submit this memorandum of law in support of their motion seeking the following *in limine* relief: (1) defendants should be permitted to introduce evidence of plaintiff's entire criminal history; (2) defendants should be permitted to introduce evidence that plaintiff was on parole at the time of his arrest, including the parole file; (3) plaintiff has no viable claim for malicious prosecution; (4) defendants should be permitted to introduce evidence of plaintiff's medical and psychological history, including records from all medical providers; (5) Tasha Ricks should be precluded from testifying at the trial; (6) defendants are entitled to an adverse inference regarding the photographs taken of plaintiff's injuries two days after the incident; (7) plaintiff should be precluded from mentioning or offering any evidence of CCRB complaints or other civil rights claims against the defendants; (8) plaintiff's photographs of the scene and map of the vicinity should be precluded; (9) plaintiff's confidentiality designations are improper; (10) the City of New York should be removed from the caption and plaintiff should be precluded from mentioning that the City was ever a defendant or that defense counsel are "City attorneys;"

and (11) plaintiff should be precluded from offering evidence of the City's potential indemnification of the defendants.

## EVIDENCE OF PLAINTIFF'S PRIOR AND SUBSEQUENT FELONY AND MISDEMEANOR ARRESTS AND/OR CONVICTIONS IS RELEVANT AND ADMISSIBLE

In the trial of the present action, defendants seek to offer evidence regarding plaintiff's prior and subsequent convictions and/or arrests for felony and misdemeanor offenses dating back from 1995 to the present.

### (A)   Plaintiff's Felony Conviction Within the Past 10 Years is Admissible.

FRE 609(a) provides that "evidence that a witness other than an accused has been convicted of a crime shall be admitted subject to Rule 403 if the crime was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted." Fed. R. Evid. 609(a).  Pursuant to FRE 609(b), such convictions are generally subjected to a ten-year time limit, although it is within the discretion of the Court to permit evidence of felony convictions over ten years old. As provided by FRE 609(b), the ten year time period for presumptive admissibility runs from "the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is later." Fed. R. Evid. 609(b).

Defendants seek to offer evidence regarding plaintiff's April 1, 2004 conviction for Attempted Criminal Possession of a Weapon in the Third Degree, a Class E Felony.  As this felony offense is punishable by a term of incarceration greater than one year, defendants should be permitted to inquire into the charges to which plaintiff pled guilty or was convicted, the fact of the conviction, and the felony nature of this offense on cross examination in regard to plaintiff's credibility.  See Daniels v. Loizzo, 986 F. Supp. 245, 248 (S.D.N.Y. 1997); Young v. C.O. Calhoun, 85 Civ. 7584 (SWK), 1995 U.S. Dist. LEXIS 4555 (S.D.N.Y. Apr. 7, 1995).

- 2 -

This conviction is also relevant and highly probative to plaintiff's claim of damages because plaintiff specifically claims that he sustained damages as a direct result of his continued prosecution for the April 14, 2006 arrest.  Defendants respectfully submit that they should be permitted to introduce this evidence for the purposes of rebutting plaintiff's damages claims as explained *infra*.

**(B)      Plaintiff's  Prior Arrest and Conviction Within Ten Years for Offenses that Constitute *Crimen Falsi* Are Admissible as they Relate to His Credibility.**

Defendants should be permitted to inquire into all prior and subsequent arrests and convictions of plaintiff as provided by FRE 609(a)(2).  FRE 609(a)(2) encompasses crimes of dishonesty or false statement, namely crimes which fall within the category of *crimen falsi*, and the Advisory Committee Notes to the 1990 Amendment of FRE 609(a)(2) make clear that Congress intended *crimen falsi* to refer to crimes such as "perjury, subordination of perjury, false statement, criminal fraud, embezzlement or false pretense…or any other offense the commission of which involves some element of deceit, untruthfulness, or falsification bearing on the accused's propensity to testify truthfully."  Fed. R. Evid. 609 advisory committee's note. Crimes in this category are "peculiarly probative of credibility and, under this rule, are always to be admitted."  United States v. Hayes, 553 F.2d 824, 825, n.5 (2d Cir. 1977).  In fact, the Second Circuit has held that "evidence of conviction of a certain type of crime, one involving 'dishonesty or false statement' must be admitted, with the trial court having no discretion, regardless of the seriousness of the offense or its prejudice to the defendants." Hayes, 553 F.2d at 827.

Plaintiff was arrested on May 11, 2006 for, *inter alia*, Criminal Impersonation in the Second Degree, a Class A misdemeanor in violation of Penal Law § 190.25.[1]  On May 16, 2006,

---

[1] A person is guilty of Criminal Impersonation in the Second Degree when he: (1) Impersonates another and does an act in such assumed character with intent to obtain a benefit or to injure or defraud another; or (2) Pretend[s] to be a representative of some person or organization and does an act in such pretended

plaintiff pled guilty to Criminal Possession of a Weapon in the Fourth Degree in satisfaction of the May 11, 2006 arrest charges, including the Criminal Impersonation offense. Courts have held that "'the definition of criminal impersonation in the second degree leaves no doubt that criminal impersonation is a crime involving falsification' and concluded that because the crime involved 'dishonesty and false statement,' the conviction was available for cross-examination purposes and admissible pursuant to Rule 609(a)(2)." Martin v. National Railroad Passenger Corp. 97 Civ. 8381(ELE), 1998 U.S. Dis. LEXIS 13979 (S.D.N.Y. 1998); quoting, Kelly v. Fisher et al., 86 Civ. 1691(MJL), 1987 U.S. Dis. LEXIS 7947.  Therefore, defendants should be permitted to introduce not only evidence of plaintiff's arrest, conviction, and sentence for his criminal impersonation crime, but also extrinsic evidence regarding the circumstances of his arrest to establish the fraudulent nature of the crime.

Additionally, plaintiff has been arrested at least twice for unlawfully entering the subway system without payment, once on May 11, 2006 and again on December 20, 2000, and was convicted of these crimes.  In one instance, plaintiff snuck under the turnstile and in another he fraudulently used a student Metrocard.  Plaintiff's commission of these acts evidences deceit, untruthfulness and falsification and defendants should be allowed to cross-examine him regarding these crimes.

**(C)**  **Plaintiff's Felony and Misdemeanor Convictions and/or Arrests Are All Admissible Under F.R.E. 404(b).**

Defendants seek to introduce evidence of plaintiff's prior arrest history. At his deposition, plaintiff admitted to being arrested "about 12 to 14 times" for a variety of offenses.  See

capacity with intent to obtain a benefit or to injure or defraud another; or (3) (a) pretends to be a public servant, or wears or displays authority any uniform, badge, insignia or facsimile thereof by which such public servant is lawfully distinguished, or falsely expresses by his words or actions that he is a public servant or is acting with approval or authority of a public agency or department; and (b) so acts with intent to induce another to submit to such pretended official authority, to solicit fund or otherwise cause another to act in reliance upon that pretense. (N.Y. Penal Law § 190.25).

Deposition of Dwayne Robertson, at p. 92, ln. 9.  Generally, evidence of "other crimes, wrongs, or acts" may be admissible under FRE 404(b) to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.  Fed. R. Evid. 404(b).  The Second Circuit takes an "inclusionary approach," which allows the admission of such evidence "for any relevant purpose" other than to show criminal propensity.  <u>Pagnucco v. Pan American World Airways, Inc.</u>, 37 F.3d 804, 823 (2d Cir. 1994).

To be relevant, evidence of motive or intent must meet the requirements of FRE 401, i.e., it must have "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence," and of FRE 403, i.e., its probative value must not be substantially outweighed by its prejudicial effect. effect."  <u>United States v. McRae</u>, 593 F.2d 700, 707 (5th Cir. 1979), <u>cert.</u> (E.D.N.Y. April 23, 1991).

Defendants submit that evidence of plaintiff's prior arrests and his previous interactions with the police, irrespective of the offense charged, is admissible because it goes directly to his state of mind during the incident on April 14, 2006, and illustrates that plaintiff was not intimidated or fearful of the defendant officers.  It is important for the jury to know that plaintiff has had prior interactions with police officers, which colored his reaction and response to the events that occurred on April 14, 2006.  Indeed, plaintiff had at least seventeen prior encounters with the police before the incident that occurred on April 14, 2006, wherein he was arrested for violent crimes including Felony Assault on a Police Officer and Resisting Arrest along with Tampering with Physical Evidence and Criminal Possession of Marijuana.

In addition to revealing plaintiff's state of mind at the time of the incident, plaintiff's criminal history as relating to prior assault and marijuana possession convictions and/or arrests

also should be admitted to prove motive, intent and pattern under F.R.E. 404(b).   At the time of his April 14, 2006 arrest, plaintiff had been arrested on various assault charges six times between 1995 and 2006, including, upon information and belief, an arrest for assaulting his own mother less than a month prior to the April 14, 2006 arrest.  Similarly, plaintiff had been arrested for selling and/or possessing controlled substances three times prior to his April 14, 2006 arrest.  Plaintiff had pled guilty to charges arising out of both an assault arrest and a criminal possession of a controlled substance arrest prior to his April 14, 2006 arrest.  This history clearly exhibits a continuous pattern of violent behavior and habitual marijuana possession and abuse (corroborated by plaintiff's medical and psychological records discussed, *infra*), which satisfies the requirements of Rule 404(b).

> **(D)  Plaintiff's Prior and Subsequent Criminal History Should Be Admissible as it is Relevant to His Credibility.**

Defendants further submit that plaintiff's entire criminal history, regardless of whether the arrest was a felony or misdemeanor, is admissible to show plaintiff's credibility or lack thereof at trial.   "[D]ifferent felonies, even those that do not constitute *crimen falsi*, bear on credibility to varying degrees."  United States v. Estrada, 430 F.3d 606, 2005 U.S. App. LEXIS 25680, at * 29 (2d Cir. Nov. 29, 2005).  Accordingly, "when performing the Rule 403 analysis, . . . district courts are admonished to consider that Rule 609(a)(1) crimes which do not bear directly on honesty such as to be automatically admissible under Rule 609(a)(2) may nonetheless be highly probative of credibility."  Id. at *31 (citation omitted).  Crimes that involve "evasions of responsibility or abuse of trust," fraud or deceit, as well as theft and escape crimes, "are significantly probative of a witness' propensity for truthfulness."  Id. at *32-34.  Furthermore, "violent crimes involving premeditation are relatively higher in probative value because they

suggest the witness is willing to break the law when it furthers his interests." Id. at *35 (citation and internal quotes omitted).

Where, as here, a civil trial turns on the credibility of the witnesses, the courts generally recognize that there are compelling reasons to admit evidence of felony convictions.  See e.g., Jones v. City of New York, 98 Civ. 6493 (LBS), 2002 U.S. Dist. LEXIS 2052, *8 (S.D.N.Y. Feb. 11, 2002).  In this case credibility is key because the jury will have to weigh the accounts of the incident as provided by the plaintiff against the account given by the defendants.  Defendants respectfully submit that the "plaintiff's credibility on the stand [is] of great importance and outweigh[s] any prejudice that may result" from admission of his prior criminal convictions.  See Brundidge v. City of Buffalo, 79 F. Supp. 2d 219, 226 (W.D.N.Y. 1999).  Therefore, this Court should allow evidence of plaintiff's prior and subsequent felony and misdemeanor convictions.

**(E)  Plaintiff's Prior and Subsequent Experiences as an Arrestee and Convicted Individual Are Relevant to Plaintiff's Claims for Damages.**

Plaintiff's prior and subsequent arrests and convictions are also pertinent to plaintiff's claims for damages.  Plaintiff alleges that, as a direct result of his April 14, 2006 arrest and prosecution, he suffered "severe" emotional and mental distress and, due solely to this particular arrest, became fearful of police officers.  The fact that plaintiff has been arrested prior to and subsequent to the incident in question, and that some of the arrests resulted in a criminal convictions, is directly relevant to causation, as it goes to the heart of plaintiff's allegations that any purported emotional and mental distress was caused by the April 14, 2006 incident.  This is especially true because plaintiff admitted at his depositions that he has been assaulted, choked and maced by police officers on several prior occasions.  Thus,  evidence of plaintiff's prior and subsequent arrests and interactions with police is relevant in order to show that his damages, including any and all claims for mental anguish, fear and/or emotional injuries, were mitigated or

controverted by his previous encounters with police.  See, e.g. Stephen v. Hanley, 03 Civ. 6226 (KAM)(LB), 2009 U.S. Dist. LEXIS 43334, *27 (E.D.N.Y. May 21, 2009); ("Defendants offer the youthful adjudication evidence to dispute causation and damages.  The court finds that this is a proper purpose, unrelated to [plaintiff's] character."); Wilson v. City of New York, 06 Civ. 229 (ARR) (VVP), 2006 U.S. Dist. LEXIS 90050, *1-2 (E.D.N.Y. Dec. 13, 2006) ("Since the plaintiff seeks damages for emotional distress arising from his arrest and detention, his prior experiences involving arrest and detention, including those which ended favorably and whose records are therefore sealed, may be relevant to the damages determination the jury will be asked to make at trial. Clearly, it could be credibly argued that one who has had a number of prior arrests and detentions is likely to have suffered less distress than one who has never before been detained.").

### (F)    Plaintiff's March 21, 2006 and May 11, 2006 Arrests Must Be Admitted

In addition to the foregoing arguments supporting the admission of plaintiff's prior criminal history generally, to the extent the Court declines to dismiss plaintiff's malicious prosecution claim as requested *infra*, plaintiff's March 21, 2006 and May 11, 2006 arrests must be admitted because they bear directly upon plaintiff's alleged post-arraignment deprivation of liberty.   As explained below, defendants respectfully submit that any post-arraignment deprivation of liberty is attributable to the prior March 21st arrest and prosecution, the subsequent May 11th arrest and prosecution, as well as the parole warrant issued for plaintiff on April 24, 2006.  The jury must know of these arrests so that a determination can be made as to the cause of plaintiff's lost liberty.

### DEFENDANTS SHOULD BE PERMITTED TO INTRODUCE EVIDENCE THAT PLAINTIFF WAS ON PAROLE ON APRIL 14, 2006, INCLUDING HIS PAROLE FILE

Defendants seek to offer evidence that plaintiff was on parole at the time he was arrested on April 14, 2006.  Defendants contend that plaintiff's parole status prompted him to flee from the defendant officers during the initial stop, assault them and thereafter resist their attempts to handcuff him.   Plaintiff's parole status is highly relevant to explain plaintiff's conduct of resisting the officers and fleeing the scene.  It is well established in this Circuit that:

> The trial court may admit evidence that does not directly establish an element of the offense charged, in order to provide a background for the events alleged…Background evidence may be admitted to show, for example, the circumstances surrounding the events or to furnish an explanation of the understanding or intent with which certain acts were performed.

> United States v. Gonzalez, 110 F.3d 936, 942 (quoting United States v. Coonon, 938 F.2d 1553, 1561 (2d Cir. 1991)).

Plaintiff's status as a parolee is admissible under Rule 404(b) to show plaintiff's *intent* and *motive* for his flight and resisting arrest   Many courts have held that evidence of other crimes, wrongs, or acts, such as parole status, is admissible to show a plaintiff's motive to resist arrest.  See Williams v. McCarthy, 05 Civ. 10230 (SAS), 2007 U.S. Dist. LEXIS 79151, * 10-12 (S.D.N.Y. Oct. 25, 2007) (plaintiff's parole status admissible because relevant to his intent and motive in resisting arrest on day of incident); Daniels v. Loizzo, 986 F. Supp. 245, 247-48 (S.D.N.Y. 1997) (court admitting evidence of outstanding parole warrant for plaintiff as evidence of his motive to resist arrest); People v. Henderson, 802 N.Y.S.2d 536 (3rd Dept. 2005) (evidence that criminal defendant was on parole at time was admissible to show motive to misidentify himself and forge his fingerprint card); People v. Robinson, 606 N.Y.S.2d 903 (2d Dept. 1994) (court permitting evidence of defendant's parole status to show motive).

It is undisputed that plaintiff was on parole on April 14, 2006, (his parole did not expire until August 31, 2007), which required that he comply with certain conditions or risk re-incarceration.  The conditions of plaintiff's parole included, *inter alia*, that he would abide by a

curfew and would not use or possess any controlled substance and that he would not violate any law or behave in any manner that would threaten the safety or well being of himself or others. Plaintiff was well aware that he was violating the conditions of his parole on the night of the incident, as he admitted at his depositions that he was out past his curfew and had smoked marijuana on the day of his arrest. Aware that he could be sent back to jail and hoping to avoid that fate, plaintiff attempted to evade arrest and struggled with the police. These facts are relevant not only to plaintiff's motivations on the night of the incident but also to his credibility.

Further, plaintiff testified at his depositions that he had previously had his parole violated and been sent back to prison. The fact that plaintiff had previously experienced the consequences of parole revocation supports the contention that it was his fear of violation that led to the events of April 14, 2006. Plaintiff's prior parole history further supports that plaintiff's motive and intent were to avoid the revocation of his parole and a return to prison. Defendants respectfully submit that they should be permitted to introduce plaintiff's parole file, including his prior parole history and documentation of his parole conditions, to refute plaintiff's claim that he fled for fear that the police would assault him.

Additionally, the fact that plaintiff was a parolee clearly affects his claims under the Fourth Amendment as well as his damages. In <u>Samson v. California</u> the Supreme Court "conclude[d] that the Fourth Amendment does not prohibit a police officer from conducting a suspicionless search of a parolee." <u>Samson v. California</u>, 547 U.S. 843, 857 (U.S. 2006). The Court stated that:

> [P]arolees are on the "continuum" of state-imposed punishments….On this continuum, parolees have fewer expectations of privacy than probationers, because parole is more akin to imprisonment than probation is to imprisonment. As this Court has pointed out, 'parole is an established variation on imprisonment of convicted criminals….The essence of parole is

> release from prison, before the completion of sentence, on the condition that the prisoner abides by certain rules during the balance of the sentence.  In most cases, the State is willing to extend parole only because it is able to condition it upon compliance with certain requirements.'"

> Samson, 547 U.S. at 850 (quoting Pennsylvania Bd. of Probation and Parole v. Scott, 524 U.S. 357, 365 (1998)).

While the Court also noted that "[u]nder California precedent . . . an officer would not act reasonably in conducting a suspicionless search absent knowledge that the person stopped for the search is a parolee," the diminished expectation of privacy and fourth amendment protections afforded parolees could certainly mitigate plaintiff's damages were a jury to find that he had been subjected to an unlawful stop.  Id. at 857 n.5.

For the reasons set forth above, plaintiff's parole status and documentation of his parole conditions and history, including evidence of any previous violations, is directly relevant to his intent and motive to fight with defendants, to his credibility, and to his Fourth Amendment claims, and is therefore admissible.

### PLAINTIFF HAS NO VIABLE CLAIM FOR MALICIOUS PROSECUTION

Plaintiff cannot show that the prosecution arising from his April 14, 2006 arrest proximately caused him to suffer any post-arraignment deprivation of liberty and, thus, he cannot maintain a claim for malicious prosecution.  "Under New York law, a malicious prosecution claim requires: '(1) the initiation of an action by the defendant against the plaintiff, (2)  begun with malice, (3) without probable cause to believe it can succeed, (4) that ends in failure or, in other words, terminates in favor of the plaintiff.'"  Cornejo v. Bell, 592 F.3d 121 (2d Cir. N.Y. 2010). (citing O'Brien v. Alexander, 101 F.3d 1479, 1484 (2d Cir. 1996); (Broughton v. State, 37 N.Y.2d 451, 335 N.E.2d 310, 314, 373 N.Y.S.2d 87 (N.Y. 1975)).  In addition to the four

elements described above, "to make out a malicious prosecution claim under § 1983, plaintiff must also show a seizure or other 'perversion of proper legal procedures' implicating the his rights under the Fourth Amendment resulting from the initiation or pendency of the criminal proceeding against him." Wong v. Yoo, 649 F. Supp. 2d 34, 67-68 (E.D.N.Y. 2009) (citing Wash. v. County of Rockland, 373 F.3d 310, 316 (2d Cir. 2004) ("'the requirements of attending criminal proceedings and obeying the conditions of bail suffice'" to show the requisite post-arraignment deprivation of liberty).

At his arraignment on April 16, 2006, the Court noted that plaintiff had a previously scheduled court date in the "DV1 part" for May 8, 2006.[2] See Arraignment Transcript, p. 1, annexed to the Declaration of Jeffrey C. Brooks ("Brooks Decl.") as Exh. A. The Court "put [] together," or consolidated, the two prosecutions and released plaintiff on his own recognizance and without bail. Thus, the April 14, 2006 arrest imposed on plaintiff no bail conditions and the only restriction on plaintiff's liberty between his arraignment and the May 8, 2006 court appearance was the requirement that he attend the next appearance.[3,4] Since plaintiff was already required to attend the next court appearance because of the prosecution he faced on the prior arrest with which his April 14, 2006 arrest was consolidated (which indisputably was not initiated by the defendants in this case), he cannot attribute the deprivation of liberty related to

---

[2] Upon information and belief, plaintiff's May 8th court appearance was related to the prosecution of a March 21, 2006 arrest.

[3] The criminal court file indicates that the case was called on May 2, 2006, but plaintiff was not present and the matter was adjourned to May 15, 2006.

[4] The record is silent as to whether plaintiff was prohibited from travelling out of state during this prosecution. However, any such restriction would be of no moment because plaintiff was already prohibited from travelling out of state by the conditions of his supervised release.

this requirement to his April 14, 2006 arrest or any act of defendants.[5]   See   Zahrey v. Coffey, 221 F.3d 342, 349 (2d Cir.  2000).

Further, according to the criminal court file, plaintiff attended only one court date related the consolidated prosecution that included the April 14, 2006 arrest – on June 7, 2006.   See Criminal Court File.   However, any alleged deprivation of liberty flowing from the June 7th appearance cannot be attributed to the April 14, 2006 arrest or any act of defendants for two reasons.   First, as mentioned above, plaintiff was required to attend that appearance because of the prior pending prosecution with which the prosecution for the April 14th arrest was consolidated on April 16th.   Second, the criminal court file entry for the June 7th appearance notes that plaintiff was already "incarcerated on [an] other matter on 5/5."[6]   Defendants respectfully submit that any deprivation of liberty between the May 11, 2006 arrest and the dismissal of the charges arising from the April 14th arrest on July 17, 2006 were "otherwise justified" by plaintiff's May 11th arrest, for which he was separately arraigned on May 13, 2006 and sentenced on May 16, 2006.   See Sandson v. Harris, 1998 WL 812564, *4 (E.D.N.Y. 1998) (An unlawful detention can be  "otherwise justified" by probable cause for a separate seizure).

Additionally, an arrest warrant based on plaintiff's parole violations was issued on April 24, 2006.  Plaintiff's parole was ultimately revoked on July 28, 2006, for violations based on the March 21st and April 14th arrests as well as other grounds.  The fact that plaintiff had a warrant for his arrest during the entire pendency of the criminal prosecution is another justification that

_____

[5] This is especially so because, according to the criminal court file, plaintiff attended neither the May 2nd nor the May 15th court dates.

[6] Defendants do not have information to indicate that plaintiff was arrested on May 5, 2006.  However, plaintiff was arrested on May 11, 2006, for charges including Criminal Possession of a Weapon in the Fourth Degree, to which he later pled guilty.

breaks the chain of causation between plaintiff's April 14th arrest and any post-arraignment deprivation of liberty.

In light of the foregoing, plaintiff cannot attribute any post-arraignment deprivation of liberty to any act of defendants and any purported malicious prosecution claim should be dismissed as a matter of law.

## DEFENDANTS SHOULD BE PERMITTED TO INTRODUCE EVIDENCE OF PLAINTIFF'S MEDICAL AND PSYCHOLOGICAL HISTORY AND RECORDS FROM ALL OF HIS MEDICAL PROVIDERS

Since plaintiff is alleging both physical and psychological damages,[7] his medical and psychological records are relevant and probative to the extent they support alternate theories of causation and impact on plaintiff's alleged damages.  They also undeniably bear directly on the issues of liability and causation.  As explained below, plaintiff's psychological condition at the time of the incident could certainly have altered his factual perception and interpretation of the events as they occurred.  In addition, this evidence is directly relevant to plaintiff's credibility at trial.  For all of these reasons, plaintiff's complete psychological and medical treatment history should be admitted.

---

[7] As a result of the alleged April 14, 2006 arrest, and as set forth in plaintiff's responses to defendants' discovery demands, plaintiff claims that he "sustained head trauma, a laceration above his left eye, bleeding, and severe pain and swelling to his face following the incident."  He claims that he received "a permanent scar from his injury, and continues to experience pain including in and around his left eye, forehead, shoulder, knees, and back as a result of the incident."  Plaintiff's Responses to Defendants' Interrogatories dated December 14, 2009, at p. 5.  Plaintiff also claims that, as a result of the incident, he "has experienced and continues to experience *severe emotional injury and distress*, fear of police officers, fear of authority figures, and an inability to concentrate on daily tasks or creative pursuits."  Id. (emphasis added).

**(A)**     **Plaintiff's Psychiatric History**

Plaintiff's medical and psychological records ███████████████████████

████████████████     See Coney Island Hospital Pediatric Discharge Summary, Bates numbered

DKR00118, Brooks Decl. Exh. B; Coney Island Hospital Record, Bates numbered NYC115,

Brooks Decl. Exh. C; Coney Island Hospital Record of Consultation, Bates numbered NYC165,

Brooks Decl. Exh. D.[8] ███████████████████████████████████████

████████████████████████████████████████.   See Coney Island

Hospital Department of Surgery Adolescent History Form, Bates numbered DKR00205, Brooks

Decl. Exh. E. █████████████████████████████████

████████████████     See Coney Island Hospital Progress Record, Bates numbered

DKR00224, Brooks Decl. Exh. F. ████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████.   See ArborWeCare Patient Medical Information

and Description of Major Problems Form, Bates DKR0014-DKR0017, Brooks Decl. Exh. G.

This evidence directly impacts plaintiff's credibility as a witness.  Courts in this circuit

have held that a clinical history of mental illness is probative of the credibility of the witness.

United States v. Sasso, 59 F.3d 341, 347-48 (2d Cir. 1995); Chnapkova v. Kong, 985 F. 2d. 79,

82  (2d Cir. 1993); see also United States v. Lindstrom, 698 F.2d 1154, 1160-61 (11th Cir. 1983)

("[a] paranoid schizophrenic, though he may appear normal and his judgment on matters outside

his delusional system may remain intact, may harbor delusions of grandeur or persecution that

grossly distort his reaction to events.").  Furthermore, to the extent a psychiatric condition exists

---

[8] Plaintiff has designated these records confidential pursuant to the Protective Order entered in this action.
Accordingly, these documents will be filed with the court under seal.

at the time the witness perceived the events in question, such a condition is more likely to be probative, because such a condition might have affected the witness' "ability to perceive or to recall events or to testify accurately." <u>Sasso</u>, 59 F.3d at 348.  Plaintiff has offered nothing to demonstrate ███████████████████████████████████████████ have abated since their initial diagnosis, and his subsequent care records indicate plaintiff ██████████████████ █████████████████████████████████████████████████████ Similarly, this psychological evidence tends to show why plaintiff failed to respond rationally and obediently to the orders of the defendant officers.  <u>See, e.g.</u>, <u>Palmquist v. Selvik</u>, 111 F.3d 1332, 1341-42 (7th Cir. 1997) (in force case, evidence of plaintiff's pre-seizure intoxication and drug possession could have been admitted where officers observed actions that revealed directly and by reasonable inference that intoxicants affected plaintiffs' conduct at and before the shooting).

**(B)     Plaintiff's (Physical) Medical History**

Plaintiff's medical records which pre-date the alleged incident in question show a history of injuries similar (sometimes identical) to those allegedly sustained during the instant incident. As such, these records may indicate breaks in the causal links between defendants' alleged actions and plaintiff's alleged injuries, and they speak directly to plaintiff's credibility regarding his injuries and their causes.  Defendants set forth some, but not all, of plaintiff's extensive treatment history below:

(1)     ████████████████████████████████████████████████████. <u>See</u> Coney Island Hospital Record, Bates numbered NYC59; NYC66, Brooks Decl. Exh. H.  Plaintiff is claiming injuries to his head as a result of the incident at bar.

(2)     ████████████████████████████████████████████████████████ ██████. <u>See</u> Emergency Medical Service Ambulance Call Report, Bates numbered NYC137, Brooks Decl. Exh. I.  Plaintiff is claiming injuries to his shoulder as a result of the incident at bar.

(3)     Plaintiff has testified that, in 1998, he sustained a gunshot wound to the left side of his forehead.  <u>See</u> Deposition of Dwayne Robertson at p. 44, Brooks Decl. Exh. J.

Plaintiff is claiming he has a permanent scar over his left eye as a result of the incident at bar.

(4) ██████████████████████████████████████████████████████ Plaintiff is claiming injury to his face as a result of the incident at bar.

(5) ██████████████████████████████████████████ See Coney Island Hospital Emergency Department Chart No. 0902555, Bates numbered DKR00177, Brooks Decl. Exh. K. ████████████████████████████████████████████████████████ ██████████████████████████████ See Injury to Inmate Report, Bates numbered NYC207, Brooks Decl. Exh. L.   Plaintiff is claiming injuries to his knees as a result of the incident at bar.

(6) ████████████████████████████████████████████████████████ ████████████████████████████ See Arbor WeCare Patient Medical Information and Description of Major Problems Form, Bates numbered DKR0014-DKR0015, Brooks Decl. Exh. G.

Accordingly, evidence of plaintiff's history of medical and psychological treatment and his psychological and mental condition during the time of the alleged incident are relevant and probative to the claims being tried and should be admissible.

### TASHA RICKS SHOULD BE PRECLUDED FROM TESTIFYING

Plaintiff seeks  to call Ms. Tasha Ricks as a witness in his case-in-chief.  According to plaintiff, Ms. Ricks was the attorney appointed by Legal Aid to represent him in the criminal proceedings related to his April 14, 2006 arrest subsequent to his arraignment.  See 2/17/10 Holloway Ltr. at p. 2.  Plaintiff purports to call Ms. Ricks (1) to testify regarding plaintiff's criminal court proceedings, "as well as her understanding of the dismissal of those charges", (2/17/10 Holloway Ltr. at p. 2; 12/15/09 Conference at 20-23) and to (2) to read the "notations and shorthand" of the Kings County District Attorney and various criminal court staff on the

criminal court file, (2/17/10 Holloway Ltr. at p. 2).[9]   However, any and all testimony that Ms.

Ricks could conceivably offer would be patently irrelevant, cumulative, and far more prejudicial

than probative.   Furthermore, much of the proposed testimony of Ms. Ricks would be hearsay

and  far  outside  the  scope  of  her  personal  knowledge.     Indeed,  Magistrate  Judge  Bloom

acknowledged that Ms. Ricks could not possibly have personal knowledge of the reason(s) the

Kings County District Attorney had for dismissing the charges.   Additionally, to the extent that

plaintiff seeks to call her to interpret "notations and short-hand"  of the various criminal court

files to the jury, this would clearly be highly prejudicial to defendants since she is not the author

of the notations. [10]   Accordingly, any and all testimony by Ms. Ricks should be precluded.[11]

### PLAINTIFF FAILED TO PRESERVE PHOTOGRAPHS OF HIS ALLEGED INJURIES AND THEREFORE DEFENDANTS ARE ENTITLED TO AN ADVERSE INFERENCE CHARGE

Defendants  are  entitled  to  an  adverse  inference  charge  due  to  plaintiff's  loss  or

destruction of photographs depicting the injuries plaintiff allegedly sustained during the instant

incident.   "A party seeking an adverse inference charge must establish: (1) that the party having

---

[9] Plaintiff appears to have abandoned his argument that Ms. Ricks' testimony would be relevant to his
false arrest claim.  See 12/15/09 Conference at 18-19.  As Ms. Ricks was not present for plaintiff's arrest,
she cannot testify regarding the circumstances surrounding it and therefore any testimony would be
irrelevant to the probable cause analysis.

[10] To the extent Ms. Ricks herself kept notes of the proceedings, she cannot testify as to the contents of
those notes as plaintiff has withheld them on the basis of attorney-client privilege and attorney work
product.  See 2/17/10 Holloway Ltr. at 3.  Permitting Ms. Ricks to testify about the content of those notes
or her recollections of the court proceedings as refreshed by those notes would be to permit plaintiff to
use these privileges as both a sword and a shield.  Accordingly, if defendants' application to preclude Ms.
Ricks is denied, defendants respectfully request that plaintiff be compelled to produce Ms. Ricks' notes.

[11] In the event the court denies defendants' motion to preclude Tasha Ricks, defendants respectfully
request the opportunity to depose Ms. Ricks prior to trial.

control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the [evidence was] destroyed 'with a culpable state of mind'; and (3) that the destroyed evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support the claim or defense." Haym Salomon Home for the Aged v. Hsb Group, 06 Civ. 3266 (JG) (JMA); 2010 U.S. Dist. LEXIS 4255, at *23 (E.D.N.Y. Jan. 20, 2010) (citation omitted). Here, plaintiff knew or should have known that photographs of his injuries would be relevant to future litigation, and plaintiff was therefore under an obligation not to destroy or misplace the photographs. See Scalera v. Electrograph Sys., 262 F.R.D. 162, 171 (E.D.N.Y. 2009) (collecting cases). As to the second prong of the requirements for an adverse inference charge, "[t]he culpable state of mind may be established by ordinary negligence." Haym Solomon, 2010 U.S. Dist. LEXIS 4255 at *23.

During his deposition, plaintiff testified that he had pictures of his alleged injuries which were taken on April 17, 2006 (two days after the incident) and that the photographs were in his apartment. See Deposition of Dwayne Robertson, at p. 177, ln. 25; p. 178, lns. 1-25. Plaintiff then promised to provide defendants with copies of the photographs. See id. at p. 179, ln. 1-2. During his continued deposition in December of 2009, and since defendants had not been provided with copies of the photographs, defendants again questioned plaintiff regarding the photographs he took of his alleged injuries and the whereabouts of said photographs. Plaintiff stated that the photographs which were previously in his apartment were now missing, and that he did not know what happened to them. See Transcript of Continued Deposition of Dwayne Robertson at pp. 234, lns. 16-25; 235, lns. 1-25, Brooks Decl. Exh. M. To date, the photographs have not been provided to defendants and therefore, an adverse inference is warranted.

**PLAINTIFF SHOULD BE PRECLUDED FROM MENTIONING OR OFFERING ANY**

- 19 -

## EVIDENCE OF CCRB COMPLAINTS OR OTHER CIVIL RIGHTS CLAIMS AGAINST THE DEFENDANTS

Defendants object, pursuant to Fed. R. Evid. 402, 403 and 404(b), to plaintiff proffering any evidence regarding the defendants' disciplinary history, prior or subsequent CCRBs, or other prior bad acts. Rule 404(b) provides: "Evidence of other crimes, wrongs, or acts is not admissible to prove character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed. R. Evid. 404(b).

With respect to false arrest and excessive force cases, the Second Circuit has uniformly held that evidence of an officer's past bad acts are only admissible under Rule 404(b) if the alleged past bad act has a close nexus with the acts complained of by plaintiff in his complaint. See e.g., Berkovich v. Hicks, 922 F.2d 1018, 1022 (2d Cir. 1991). Here, it cannot be said the defendants' disciplinary history, CCRBs, or other prior bad acts fall within the "exceptions" of Fed. R. Evid. 404(b). Especially, where, as here, there is no municipal claim for failure to train or discipline, the officers histories are completely irrelevant and prejudicial.

Plaintiff may seek to proffer such evidence in an attempt to demonstrate the defendant police officers' propensity to commit such acts and that they acted in conformity therewith in the incidents at issue. However, this proffer "amounts to no more than a veiled attempt to do what Rule 404(b) expressly prohibits." Berkovich, 922 F.2d at 1022. Thus, admission of the foregoing would be extremely prejudicial to defendants and serve to confuse the jury in violation of Rule 403 and 404(b) of Fed. R. Evid. and should be precluded.

## PLAINTIFF'S PHOTOGRAPHS OF THE SCENE AND MAP OF THE VICINITY OF THE INCIDENT SHOULD BE PRECLUDED

Plaintiff has offered a number of photographs purportedly of the scene of plaintiff's arrest on April 14, 2006, as well as a satellite image with a map superimposed printed from Google Maps purporting to show the vicinity of plaintiff's arrest.  See Plaintiff's Proposed Exhibits PX29 to PX39, Brooks Decl. Exh. N.  All of these photographs and the Google map should be precluded, as they are prejudicial and would mislead the jury.

As to the photographs, first, all of the photographs provided by plaintiff lack a date and time stamp, and thus defendants are unable to determine whether the photographs can accurately depict the scene of plaintiff's arrest as it was in April of 2006.  Second, and more importantly, the photographs were clearly taken during the day even though it is beyond dispute that the incident occurred at night when it was dark.  Photographs depicting the scene during the day would clearly mislead the jury to the prejudice of defendants, as the probable cause determination is based on what was objectively known and observed by the officers at the time of the incident.  See Maryland v. Pringle, 540 U.S. 366, 371 (2003).  Furthermore, plaintiff's exhibits PX30, PX32, PX33, PX37, PX38, and PX39 lack any indicator that they were even taken in the vicinity of the location of plaintiff's arrest.  Finally, plaintiff's exhibits PX30, PX37, and PX39, which appear to depict a storm drain, lack any indicia whatsoever of relevance to this action – plaintiff has not demonstrated any link these photographs have to the instant incident.  To permit the introduction of these irrelevant and misleading photographs would be highly prejudicial to defendants.

As to the Google satellite image map, plaintiff's exhibit PX29, the map depicts a satellite view of the vicinity of Pitkin Avenue and Williams Avenue in Brooklyn as of February 2010.  The use of a satellite view of the vicinity taken in February of 2010, nearly four years after the alleged incident is improper, as the view may not accurately depict the area as it was in April of

2006.  Furthermore, the map has a location marker (depicted as "A") showing the intersection of Pitkin and Williams, which may imply to jurors that the arrest took place in the intersection itself, contrary to the testimony of the parties and therefore misleading.  Similarly, Pitkin Avenue is highlighted in yellow, which may suggest to the jury the path the officers and/or plaintiff might have followed, which again would be misleading and contrary to the testimony of the parties.  Finally, as with the photographs, the satellite image appears to show the vicinity as it appears during the daytime, rather than at night.  For all of these reasons, the satellite image map is misleading and should be precluded.

## PLAINTIFF'S CONFIDENTIALITY DESIGNATIONS ARE IMPROPER

Pursuant to the Stipulation and Protective Order entered in this action, plaintiff has designated all of his medical records, including both prior and post-incident medical and psychological treatment as well as his treatment at Brookdale Hospital immediately following the incident, his criminal rap sheet, and his parole file as "Confidential."  Pursuant to Paragraph 2 of the protective order, defendants objected to the designation of these documents as confidential, and the parties in good faith attempted to negotiate the designations, but to no avail. For the reasons set forth below, defendants respectfully request that the court de-designate these documents as confidential.

In examining the designation of a document as confidential pursuant to a protective order entered pursuant to Rule 26, the invoking party must be able to demonstrate good cause for the designation of a document as confidential.  See Gambale v. Deutsche Bank AG, 377 F.3d 133, 142 (2d Cir. 2004); Allen v. City of New York, 420 F. Supp. 2d 295, 301 (S.D.N.Y. 2006). Good cause may be shown "when a party shows that disclosure will result in a clearly defined, specific and serious injury."  In re Terrorist Attacks on September 11, 2001, 454 F. Supp. 2d

- 22 -

220, 222 (S.D.N.Y. 2006).  Further, in determining whether good cause has been shown, courts must weigh the private interests advanced against the public interest in judicial documents. Cumberland Packing Corp. v. Monsanto Co., 184 F.R.D. 504, 505 (E.D.N.Y. 1999).

Here, plaintiff can make no good cause showing as to why these documents should remain confidential at trial, as the medical records of plaintiff's immediate post-incident medical treatment, records of his prior and subsequent medical and psychological treatment, his rap sheet, and his parole file are directly germane to the claims and defenses of this case.[12]  Plaintiff should not be permitted to shield disclosure of these documents when he himself has put the nature and extent of the injuries he allegedly suffered and the nature of his supposed deprivation of liberty at issue.  See, e.g., Am. S.S. Owners Mut. Prot. & Indem. Ass'n v. Alcoa S.S. Co., 232 F.R.D. 191, 199 (S.D.N.Y. 2005) (discussing "sword and shield" waiver of attorney-client privilege); Hercules, Inc. v. Exxon Corp., 434 F. Supp. 136, 156 (D. Del. 1977) (unfair to allow party to "disclose only those facts beneficial to its case and refuse to disclose, on the grounds of privilege, related facts adverse to its position").  These documents will play a critical function in the judicial role of this court, in that the documents bear directly on the determination of the ultimate liability of the parties in this action, and therefore should not be shielded by the protective order.  See United States v. Amodeo, 71 F.3d 1044, 1050 (2d Cir. 1995); Cumberland Packing Corp., 184 F.R.D. at 506 (confidentiality appropriate for documents only tangentially related to the litigation, particularly during discovery).

---

[12] Defendants also note that as plaintiff's rap sheet is a record of his *convictions* for various crimes, which are not protected by N.Y. Crim. Proc. Law §160.50.  As such, this document does not qualify for protection under the protective order.  See Protective Order, paragraph 1(b) (Plaintiff may designate as Confidential "documents…containing *non-public* personal or medical information that Plaintiff in good faith deems Confidential.") (emphasis added).

Also, the Brookdale medical records of plaintiff's treatment immediately post-incident were, in large measure, publicly filed as Exhibits J, K, L, and M to defendants' motion for summary judgment. Thus, they are part of the public judicial record in this case, and plaintiff cannot now belatedly designate them as confidential. See Lugosch v. Pyramid Co., 435 F.3d 110, 121 (2d Cir. 2006) ("[D]ocuments submitted to a court for its consideration in a summary judgment motion are – as a matter of law – judicial documents to which a strong presumption of access attaches."). Indeed at no time after the filing of defendants' motion and before plaintiff's letter dated January 22, 2010, did plaintiff, while he was he was acting *pro se*, or his counsel, ever object to the use of any of plaintiff's medical records in support of defendants' motion or during any of the party depositions did they ever raise the issue of confidentiality. As mentioned above, for some reason, plaintiff has even chosen to designate as confidential the very documents upon which he bases his claim for excessive force. Plaintiff's designation of the parole records is similarly without merit, inasmuch as they stem from and ultimately relate to an unsealed felony conviction which, upon information and belief has not been challenged by plaintiff and remains a public record. Plaintiff cannot meet his burden with respect to these designations.

For the foregoing reasons, plaintiff's medical and psychological treatment records, his records of treatment immediately post-incident at Brookdale Hospital, his rap sheet, and his parole file should be de-designated as confidential.

**DEFENDANT CITY OF NEW YORK SHOULD BE REMOVED FROM THE CAPTION OF THE CASE AND PLAINTIFF SHOULD BE PRECLUDED FROM MENTIONING THAT THE CITY WAS A PARTY OR THAT THE ATTORNEYS ARE "CITY ATTORNEYS"**

The City of New York objects, pursuant to Fed. R. Evid. 402 and 403, as a party dismissed from this case, from being referenced as a defendant in this action, and to plaintiff

proffering any evidence or mentioning that the City of New York was ever a defendant in this matter.    Pursuant to Fed. R. Evid. 403, it would be prejudicial if plaintiff is permitted to inform the jury that the City of New York was once a defendant in this action or that the defendants' attorneys are City attorneys.   Additionally, as the City is no longer a party to this case, it should be removed from any caption that might be seen by the jury.   Accordingly, the Court should preclude plaintiff from mentioning that the City was ever a defendant in this matter, either specifically or generally and remove it from any and all captions.

### PLAINTIFF SHOULD BE PRECLUDED FROM OFFERING EVIDENCE OF THE CITY'S POTENTIAL INDEMNIFICATION OF DEFENDANT POLICE OFFICERS

Based upon the established precedent in this Circuit there is no relevant basis for the admission of possible indemnification evidence at trial and accordingly such evidence should be precluded.   See Williams v. McCarthy, No. 05 Civ. 10230 (SAS), 2007 U.S. Dist. LEXIS 79151, at *24-25 (S.D.N.Y. Oct. 25, 2007); Dallas v. Goldberg, No. 95 Civ. 9076 (LTS), 2002 U.S. Dist. LEXIS 8829, at *15 (S.D.N.Y. May 20, 2002).   Therefore, defendants object, pursuant to Fed. R. Evid. 402 and 403, to plaintiff proffering any evidence regarding the potential indemnification of the defendant police officers by the City of New York.

Furthermore, the introduction of indemnification as evidence at trial would unfairly prejudice the defendants because if the jury is permitted to assume that the City of New York will pay a damage award, the jury may not carefully assess the issues of individual liability and damages.   In fact, any determination regarding indemnification of a defendant by the City will not be made until after a verdict in plaintiff's favor (assuming plaintiff succeeds on any claims). See Banks v. Yokemick, 144 F. Supp. 2d 272, 287 (S.D.N.Y. 2001).

## <u>CONCLUSION</u>

For the foregoing reasons, defendant respectfully requests that the Court grant his motions in their entirety and for such other and further relief as the Court deems just and proper.

Dated:      New York, New York
              February 18, 2010

                         MICHAEL A. CARDOZO
                         Corporation Counsel of the City of New York
                         *Attorney for Defendants*
                         100 Church Street
                         New York, New York 10007
                         (212) 788-1816/9736

By:                         _____

                         Gabriel P. Harvis
                         Assistant Corporation Counsel

By:                         _____

                         Jeffrey C. Brooks
                         Assistant Corporation Counsel