CONTAINS CONFIDENTIAL INFORMATION
FILED UNDER SEAL

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

DWAYNE KINTE ROBERTSON

Plaintiff,

vs.

OFFICER MATTHEW SULLIVAN, Shield #29723; OFFICER NILES PRINCE, Shield #22353, and SEARGEANT DIMITRI DAGLAS, Shield #01647

Defendant.

07-CV-1416(JG)(LB)

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTIONS *IN LIMINE***

CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
*Attorneys for Plaintiff Dwayne Kinte Robertson*

Plaintiff Dwayne K. Robertson ("Plaintiff") respectfully submits this memorandum of law in response to Defendants Motions In Limine. For the reasons set forth below, Defendants' motions should be denied.

## ARGUMENT

### I. EVIDENCE OF PLAINTIFF'S CRIMINAL HISTORY CANNOT BE ADMITTED.

Plaintiff has been arrested multiple times since 1995, and has been convicted, on a plea of guilty, to one felony in 2004, and four misdemeanors in 1997, 2002, 2006 and 2008, respectively. (Pls' Br. at 2.) Defendants seek to admit the entirety of Plaintiff's criminal record – all of his arrests and convictions – without any theory regarding the specific relevance of any single item's probative value. Moreover, under Rule 403, the probative value of Mr. Robertson's arrests and convictions, if any, is far outweighed by the unfair prejudice they would inevitably cause if they were admitted. (Pls' Br. at 4-8.) For the reasons stated herein and in Plaintiff's Memorandum of law in Support of his Motions In Limine, those requests should be denied.

#### A. Plaintiff's Felony Conviction is Not Admissible under Rule 609(a).

Defendants seek, pursuant to Rule 609(a)(1), to impeach Mr. Robertson with evidence regarding his April 1, 2004 conviction for Attempted Criminal Possession of a Weapon in the Third Degree, a Class E Felony. (Def. Br. at I.A, D.)[1] That conviction does not satisfy Rule 609, and therefore cannot be used to impeach.

First, evidence of felony convictions from the past 10 years are not, as Defendants assert, presumptively admissible. (Def. Br. at 2.) Rather, a felony conviction may be admissible pursuant to Rule 609(a)(1) if it is sufficiently probative of credibility to outweigh any prejudice

[1] Defendants also claim that Mr. Robertson's conviction is relevant to damages and should be admitted under Rule 404(b), an argument that is addressed below, infra Section I.D.

that might result from its admission. See Daniels v. Loizzo, 986 F.Supp. 245, 250 (S.D.N.Y. 1997). The prime factor, however, is whether the conviction bears on veracity. Stephen v. Hanley, No. 03-CV-6226, 2009 WL 1471180 at *4 (E.D.N.Y. May 21, 2009). Indeed, none of the cases on which Defendants rely concerned a witness convicted of a weapons possession charge. To the contrary, the Court permitted questioning regarding a witness's prior felony conviction where that felony "rank[ed] high on the scale of veracity-related crimes." Brundidge v. City of Buffalo, 79 F.Supp.2d 219, 226 (W.D.N.Y 1999). See also Jones v. City of New York, 2002 U.S. Dist. LEXIS 2052, *6 (S.D.N.Y. Feb. 11, 2002). Defendants have made no showing that a plea of guilty to attempted criminal possession of a weapon is veracity-related.

**B. Plaintiff's Misdemeanor Convictions are Not Admissible Under Rule 609(a)(2).**

Mr. Robertson pled guilty to Criminal Possession of a Weapon in the Fourth Degree on May 16, 2006. Defendant seeks to impeach Mr. Robertson with evidence of that conviction pursuant to Rule 609(a)(2). (Def. Br. at I.B.) Defendants also seek to admit evidence regarding Mr. Robertson's other misdemeanor convictions as probative of his credibility. (Def. Br. at I.D.) Both requests should be denied.

Rule 609(a)(2) provides that misdemeanor convictions for crimes that fall within the category of *crimen falsi* are admissible for impeachment. Mr. Robertson has pled guilty to Third Degree Menacing (November 7, 1997), Seventh Degree Attempted Possession of a Weapon (March 13, 2002), Fourth Degree Criminal Possession of a Weapon (May 16, 2006) and Third Degree Attempted Assault (June 3, 2008)[2]. None of those charges are offenses regarding

[2] Upon information and belief, the alleged facts underlying those proven charges are, respectively, (1) Plaintiff bit complainant's lip; (2) possession of a single bag of cocaine and a $20 bill with cocaine on it; (3) possession of a gravity knife; and (4) physical altercation with the mother of one of Plaintiff's children. A gravity knife is "any knife which has a blade which is released from the handle or sheath thereof by the force of gravity or the application of centrifugal

"dishonesty or false statement" and therefore do not qualify for admission pursuant to Rule 609(a)(2). U.S. v. Hayes, 553 F.2d 824, 827 (2d Cir. 1977); Daniels, 986 F.Supp. at 249. Moreover, the admission of Mr. Robertson's November 7, 1997 conviction on Third Degree Menacing charges is barred by Rule 609(b), because it took place more than ten years ago.

Defendants suggest that Mr. Robertson also pled guilty to or was convicted of "Criminal Impersonation in the Second Degree" on May 16, 2006, and unlawfully entering the subway without payment on May 11, 2006 and December 20, 2000. (Def. Br. at 4.) Defendants are incorrect – Mr. Robertson was arrested on those charges, but was only convicted of Fourth Degree Criminal Possession of a Weapon on May 16, 2006. Rule 609 only permits the admission of convictions of *crimen falsi*, not arrests. To the extent Defendants are seeking to admit evidence of those unproven charges against Plaintiff, that argument is addressed below. See Section I.C., infra.

**C. Arrests of and Unproven Charges Against Plaintiff are Inadmissible.**

Defendants also separately seek to introduce evidence regarding all of Plaintiff's arrests to show Plaintiff's credibility or lack thereof. (Def. Br. at I.B, D) That request should be denied.

Defendants' appeal to Rule 609 to justify admission of Plaintiff's arrests and unproven charges is unavailing because that rule allows only for the admission of convictions, and as discussed above, it does not countenance the admission of any of Mr. Robertson's five convictions. See Sections I.A, B, supra.

Reliance on Rule 608 would also be unavailing. Daniels explicitly held that "arrests that did not result in convictions are not admissible as specific instances of conduct

---

force which, when released, is locked in place by means of a button, spring, lever or other

under Federal Rule of Evidence 608(b)". Daniels 986 F.Supp. at 252, citing Michelson v. United States, 335 U.S. 469 (1948) ("Arrest without more does not…impeach or impair the credibility of a witness. It happens to the innocent as well as the guilty. Only a conviction, therefore, may be inquired about to undermine the trustworthiness of a witness." ).

Arrests and unproven charges have little probative value, and the prejudice inherent in permitting their admission for impeachment is obvious – there is a very real danger that the jury will attach the same significance to a charge as they would a conviction. Stephen v. Hanley, 2009 WL 1471180 at *7.

**D. Plaintiff's Felony and Misdemeanor Convictions and Arrests are not Admissible under Rule 404(b).**

Defendants also seek admission of Plaintiff's entire criminal history pursuant to Rule 404(b) under two theories. Neither is availing.

1. Mr. Robertson's State of Mind

Defendants argue that Mr. Robertson's entire prior arrest history should be admitted under Rule 404(b) because it is probative of Mr. Robertson's "state of mind" on April 14, 2006. (Def. Br. at I.C.) However Defendants offer no explanation as to how Mr. Robertson's "state of mind" is probative of any matter in dispute – whether the officers had reasonable suspicion to stop Mr. Robertson, whether Mr. Robertson was struck in the head with a baton after he was handcuffed, and whether the officers had probable cause for his arrest and prosecution.[3] Instead, they argue that Mr. Robertson's criminal history is admissible because it exhibits "violent behavior" and "habitual marijuana possession". (Def. Br. at 7.) Defendants'

device." N.Y. Penal Law § 265.00.

[3] Intent is not at issue when there is "a dispute as to whether or not a party performed a particular physical act". Hynes 79 F.3d at 291; see also Eng v. Scully, 146 F.R.D. 74, 77-78

only "state of mind" theory is that because Mr. Robertson broke the law before, was aggressive before, possessed drugs before, it is more likely that he did so on April 14, 2006 as well. Whether it is described as "state of mind" or "motive" that propensity-based inference is precisely what Rule 404(b) prohibits, and introduction of Plaintiff's criminal record for that improper purpose should be prohibited.[4]

2. Causation and Damages

Defendants also argue that Plaintiff's entire criminal history should be admitted because it is relevant to causation and damages. (Def. Br. at I.E.) That request should be denied.

Defendants' attempt to admit Plaintiff's entire criminal record without making any showing that any one of Plaintiff's arrests is probative to his damages claim should be rejected. Defendants cite no authority – and Plaintiff is aware of none – to support their argument that the wholesale admission of criminal history, without an individualized analysis of the probative value of each proffered arrest, would be appropriate.[5] Moreover, Defendants' suggestion that such an analysis is unnecessary overlooks the nature of the damages claimed in this action. At issue here is not the distress that might follow a lawful arrest or prosecution, but rather damages resulting from a violation of Mr. Robertson's Fourth Amendment rights – a stop made without suspicion, an arrest and subsequent prosecution made without probable cause, and

---

(S.D.N.Y. 1993) (in an excessive force case, evidence of "motive will not aid the finder of fact in determining the amount of force applied").

[4] Defendants suggestion that Mr. Robertson's criminal history is relevant to show a "pattern" of conduct is also misplaced, as that proper purpose under Rule 404(b) is relevant only where the identity of the perpetrator or the absence of mistake is in dispute. Hynes, 79 F.3d at 291.

[5] In Wilson v. City of New York, the Court was not making an evidentiary determination, but rather granted the City discovery regarding the plaintiff's prior experiences with arrest and detention because they "may be relevant to the damages determination the jury will be asked to make at trial." 06 Civ. 229, 2006 U.S. Dist. LEXIS 90050, *1-2 (E.D.N.Y. Dec. 13, 2006) (emphasis added).

a brutal blow to the head suffered while Mr. Robertson was handcuffed and prone. Those damages are entirely different in kind from any distress Mr. Robertson may have experienced from prior, presumably lawful, arrests, and those prior arrests therefore have no relevance to the causation and damages issues presented here. This is nothing more than a thinly veiled attempt on the part of Defendants to persuade the jury that a repeat offender cannot or should not be compensated for his unlawful treatment.

Defendants' second theory is that prior abuse at the hands of police officers either inured Mr. Robertson to the use of excessive force or was an alternate cause of his emotional distress and is therefore relevant to causation and damages. (Def. Br. at 7.) As an initial matter, this theory could only possibly justify the admission of evidence regarding that abuse, not – as Defendants are seeking – the admission of Mr. Robertson's entire criminal history. More important, however, there is no evidence that any of the arrests Defendants seek to admit could have any relevance on this theory. Defendants incorrectly assert that many of the arrests they seek to admit involve abuse. (Def. Br. at 7 (Mr. Robertson was "assaulted, choked and maced by police officers on several prior occasions.")) However Plaintiff testified to abuse at the hands of police officers in connection with only one of the arrests Defendants are seeking to admit – his arrest for Second Degree Obstruction on July 27, 2008.[6] That arrest took place more than two years after the incident in question, and more than one year after the filing of the complaint in this case and therefore could not have "mitigated or controverted", or represented an independent cause of, Mr. Robertson's damages.

**E. Plaintiff's May 11, 2006 Arrest is Irrelevant and Should not be Admitted.**

[6] In addition, Defendant has produced arrest reports for seven of Plaintiff's arrests and each indicates that no force was used by the police officers making the arrest. See DX DD, Holloway II Decl. Ex 4.

As discussed below (infra Section III) Plaintiff's May 11, 2006 arrest is irrelevant to the question of whether the April 2006 charges were the proximate cause of a deprivation of Mr. Robertson's liberty, and should not be admitted.[7] Moreover, as noted above, to the extent the May 11, 2006 arrest has any minimal probative value, that value is substnatially outweighed by the the undue prejudice Mr. Robertson would suffer by its admission and it should be excluded pursuant to Rule 403.

## II. EVIDENCE THAT PLAINTIFF WAS ON PAROLE, INCLUDING HIS PAROLE FILE.

It is undisputed that Plaintiff was on parole on April 14, 2006. Indeed, the parties have so stipulated. (See February 18, 2010 Joint Pretrial Order, at 6.) Despite that stipulation, Defendants now seek to offer Plaintiff's entire parole file as evidence of Plaintiff's parole status at the time he was arrested on April 14, 2006. (Def. Br. at 8-11.) None of the cases on which Defendants rely support their position. Those cases hold only that Plaintiff's parole status is admissible for the specific and limited purpose of showing a witness's motive to resist arrest. See Williams v. McCarthy, 05 Civ. 10230, 2007 U.S. Dist. LEXIS 79151, *10-12 (S.D.N.Y. Oct. 25, 2007); Daniels, 986 F.Supp. at 247-8.[8] The introduction of Mr. Robertson's entire parole file is unnecessary in light of the parties' stipulation and has no additional probative value. That file includes irrelevant and prejudicial information regarding Mr. Robertson's arrests, behavior while on parole including results of drug tests from 2007, notes regarding whether Mr.

[7] Plaintiff's March 21, 2006 arrest is included as one of the charges on the Violation of Release Report regarding Plaintiff's parole violation. See Holloway Decl. Ex. 2. Plaintiff therefore submits that the fact and date of that arrest are admissible, but questioning or the admission of evidence regarding the underlying facts of that arrest should be precluded.

[8] Also, Plaintiff will seek to admit the Report of Release Violation from Mr. Robertson's parole file because it is probative of the deprivation of liberty element of his federal malicious prosecution claim. See Holloway II Decl. Ex. 2.

Robertson is seeking employment – none of which are probative, or relevant to Mr. Robertson's credibility.

Defendants' alternate theory, that status as a parolee affects Mr. Robertson's Fourth Amendment claims and damages is without support. The single case relied on by Defendants, Samson v. California, 547 U.S. 843 (2006) held that a suspicionless search of a parolee did not violate the Fourth Amendment, where a California law required parolees to consent to searches as a condition of their parole and the officer confirmed the parolees status by radio before conducting the search. That holding has no relevance to the extent of Mr. Robertson's damages, since his arrest and subsequent prosecution indisputably were required to be supported by probably cause. Moreover, the Samson Court explicitly stated that "an officer would not act reasonably in conducting a suspicionless search absent knowledge that the person stopped for the search is a parolee." 547 U.S. at 856 n. 5. Here, unlike in Samson, there is no allegation that any of the Defendant police officers knew or had reason to know that Mr. Robertson was on parole at the time of his April 14, 2006 arrest.

## III. PLAINTIFF HAS ASSERTED A VIABLE CLAIM FOR MALICIOUS PROSECUTION.

Defendants ask the Court to dismiss Mr. Robertson's malicious prosecution claim as a matter of law on the ground that the prosecution arising from his April 15, 2006 arrest did not proximately cause him to suffer any post-arraignment deprivation of liberty. Defendants' request should be denied.

### A. The April 2006 Charges Were the Proximate Cause of a Deprivation of Plaintiff's Liberty.

Courts have recognized that the burdens attendant to a pending criminal prosecution can constitute a deprivation of liberty sufficient to support a malicious prosecution

claim under § 1983. As Justice Ginsburg observed in her concurrence in Albright v. Oliver, 510 U.S. 266 (1994):

> A person facing serious criminal charges is hardly freed from the state's control upon his release from a police officer's physical grip. He is required to appear in court at the state's command. He is often subject, as in this case, to the condition that he seek formal permission from the court (at significant expense) before exercising what would otherwise be his unquestioned right to travel outside the jurisdiction. Pending prosecution, his employment prospects may be diminished severely, he may suffer reputational harm, and he will experience the financial and emotional strain of preparing a defense.
>
> A Defendant incarcerated until trial no doubt suffers greater burdens. That difference, however, should not lead to the conclusion that a Defendant released pretrial is not still "seized" in the constitutionally relevant sense. Such a Defendant is scarcely at liberty; he remains apprehended, arrested in his movements, indeed "seized" for trial, so long as he is bound to appear in court and answer the state's charges.

Albright, 510 U.S. at 279 (Ginsburg, J., concurring). See also Murphy v. Lynn, 118 F.3d 938, 945 (2d Cir. 1997) (holding that the requirement that a Defendant attend court hearings and not leave the state of New York during a pending criminal prosecution constituted a "seizure" for purposes of a malicious prosecution claim under § 1983).

Indeed, Defendants do not appear to dispute that the burdens imposed on Mr. Robertson by virtue of the April 2006 charges constituted a deprivation of his liberty and, hence, a "seizure" under the Fourth Amendment. Instead, Defendants argue that the April 2006 charges were not the proximate cause of that deprivation because the deprivation was "otherwise justified" by independent causes, namely, Plaintiff's March 21, 2006 and May 11, 2006 arrests and an April 24, 2006 arrest warrant based on parole violations. Defendants' arguments in this regard are simply incorrect.

Had the prosecution resulting from the March 21, 2006 arrest not been consolidated with the prosecution for the April 2006 charges, the March 2006 misdemeanor charges would have been dismissed on speedy trial grounds nearly a month earlier than they

otherwise were (i.e., on or around June 21, 2006—90 days after the commencement of that action—as opposed to July 17, 2006, when both the March and April 2006 charges ultimately were dismissed on speedy trial grounds). N.Y. Crim. Proc. Law § 30.30. Because of the April 2006 charges that are the subject of Mr. Robertson's malicious prosecution claims, Mr. Robertson was forced to endure the burdens of a pending criminal proceeding for approximately an additional month above and beyond that which he would have endured by virtue of the March 2006 charges alone. Therefore, the earlier prosecution is irrelevant to the question of whether the April 2006 charges were the proximate cause of a deprivation of Mr. Robertson's liberty.

Similarly, Mr. Robertson's May 11, 2006 arrest does not constitute an independent cause of the deprivation of his liberty during the time period June 21, 2006 through July 17, 2006. According to Mr. Robertson's Rap Sheet (Defendants' Exhibit N Holloway II Decl. Ex 1), the May 11 misdemeanor arrest led to Mr. Robertson being sentenced to 10 days in prison upon a guilty plea on May 16, 2006. Upon information and belief, Mr. Robertson served that sentence immediately thereafter at Riker's Island. Therefore, his May 11 arrest cannot have been the cause of any deprivation of Mr. Robertson's liberty between June 21, 2006 and July 17, 2006.

Finally, Defendants point to an arrest warrant issued on April 24, 2006 based on parole violations as another purported independent cause of the deprivation of Plaintiff's liberty. However, Defendants ignore the fact that the April 2006 charges against Mr. Robertson were themselves a substantial factor—indeed, likely the determining factor—in the decision to issue the April 24, 2006 warrant for violations of his parole. (See Defendants' Exhibit X, Holloway II Decl. Ex 2 at DKR00351.) In fact, that warrant was issued on the very day that the Division of Parole received notice of Mr. Robertson's April 15, 2006 arrest (see id. at DKR00304-05 (stamped "Received April 24, 2006")), despite the fact that an earlier arrest on March 21, 2006

had not previously resulted in the issuance of such a warrant. Thus, far from being an unrelated, independent cause of the deprivation of Mr. Robertson's liberty that is at issue here, the April 24, 2006 arrest warrant (as well as the subsequent revocation of his parole and the resulting incarceration) are further examples of the deprivations that Mr. Robertson endured as a direct, proximate result of his malicious prosecution on the April 2006 charges.

**B. Plaintiff Need Not Establish a Deprivation of Liberty For Purposes of His State Law Malicious Prosecution Claim.**

As indicated in the parties' February 18, 2010 Proposed Joint Pre-Trial Order, Plaintiff asserts a claim for malicious prosecution under New York state law in addition to his federal malicious prosecution claim under § 1983. Defendants concede that, unlike the federal claim, state law does not require that Plaintiff establish a post-arraignment deprivation of liberty in order to maintain a claim for malicious prosecution. (Def. Br. at 11-12.) Therefore, even assuming that Plaintiff could demonstrate no such deprivation, his state law claim would nevertheless survive, and trial would still be required thereon.

**C. Defendants' Request to Dismiss the Malicious Prosecution Claim is More Appropriately Addressed at the Rule 50 Stage.**

The procedural basis for Defendants' request to dismiss Plaintiff's federal malicious prosecution claim as a matter of law—which Defendants make in their motions in limine—is unclear. Moreover, the Court has already informed the parties explicitly that questions regarding which Defendant is liable on which charge, and whether Mr. Robertson has established the deprivation of liberty necessary to make out a claim of malicious prosecution under federal law are to be handled at the Rule 50 stage. (See 10/2/09 Summary Judgment Tr. at 18:2-7, 20:12-13). Proceeding in that manner is particularly appropriate here, since dismissal of Plaintiff's federal malicious prosecution claim now would not change the proof to be offered at

trial anyway on Plaintiff's state law malicious prosecution claim. Therefore, Defendants' request to dismiss the federal claim should be denied.

## IV. DEFENDANTS' SHOULD NOT BE PERMITTED TO INTRODUCE PLAINTIFF'S ENTIRE MEDICAL AND PSYCHOLOGICAL HISTORY AND RECORDS FROM ALL MEDICAL PROVIDERS.

Although certain of Plaintiff's medical records may bear upon the physical and psychologial injuries Plaintiff is claiming as a result of his treatment at the hands of the Defendant officers, Defendants' request to introduce Plaintiff's complete psychological and medical treatment history is without basis and should be denied.

### A. Plaintiff's Psychiatric History

Confidential - Filed Under Seal

Confidential - Filed Under Seal

Confidential - Filed Under Seal

Confidential - Filed Under Seal

Confidential - Filed Under Seal

Confidential - Filed Under Seal

Confidential - Filed Under Seal

**B.     Plaintiffs Other Medical History**

Plaintiff does not dispute that evidence of  his physical injuries and medical

treatment may be admissible to the extent they bear on the injuries for which Plaintiff is claiming

damages in this action.  However Defendants have made no effort to identify which of Plaintiff's

medical records they will seek to admit for that purpose.  Rather, Defendants have listed all of

the medical records produced in discovery – almost 450 pages:



1.  Confidential - Filed Under Seal

2.  Confidential - Filed Under Seal

3.  Confidential - Filed Under Seal

These records include information about injuries and treatment unrelated to any of

the injuries claimed by Plaintiff, and their admission would serve no purpose other than to

publicly harass and embarrass Plaintiff and should be precluded.

## V.  TASHA RICKS SHOULD NOT BE PRECLUDED FROM TESTIFYING AT TRIAL.

Defendants also request that the Court preclude Plaintiff from calling Ms. Tasha

Ricks as a witness in his case-in-chief.  Ms. Ricks was the Legal Aid attorney that represented

Mr. Robertson in connection with the criminal charges that arose from his April 15, 2006 arrest.

In that capacity, Ms. Ricks attended the court appearances relating to those charges, and we

anticipate that she will testify regarding those proceedings, as well as the dismissal of the charges

against Mr. Robertson.  As Mr. Robertson's attorney, it was Ms. Ricks' job to understand the

course of the proceedings and why the charges against her client were ultimately dismissed, and

it is on the basis of that personal knowledge that she will testify.

The documents relating to the criminal proceedings include notations and

shorthand with which Ms. Ricks is familiar, and we anticipate that she will be able to explain

those notations to the jury.  Specifically, the docket or "buck" sheet for the case against Mr.

Robertson contains a reference to "30.30" and notes that there was "no corrob or lab". Without more, this document would be unintelligible to the jury. Thus, based on the notations on the document—which it was incumbent on Ms. Ricks to understand at the time—Ms. Ricks will explain that the charges against Mr. Robertson were dismissed on speedy trial grounds due to the prosecution's failure to supply a corroborating affidavit from the arresting officer and a lab report regarding the marijuana that Mr. Robertson was charged with possessing. These issues go directly to, among other things, the "favorable termination" element of Plaintiff's malicious prosecution claims, and, in Plaintiff's view, they call into question the existence of probable cause for his arrest and subsequent prosecution. As such, Ms. Ricks' anticipated testimony is highly relevant to Plaintiff's claims, and Defendants have articulated no prejudice that could arise by virtue of that testimony.

Moreover, Ms. Ricks' anticipated testimony falls squarely within the realm of opinion testimony that appropriately may be offered by a lay witness pursuant to Federal Rule of Evidence 701. See U.S. v. Rigas, 490 F.3d 208, 222-25 (2d Cir. 2007) (holding that employee's testimony about debt reclassifications was not impermissible expert testimony since it was based on his observations during months as an employee, rather than exclusively on his specialized knowledge). In Williams v. McCarthy, which concerned a scenario remarkably similar to the one at issue here, the court permitted an assistant district attorney to testify on issues relevant to the malicious prosecution claim asserted therein. 2007 U.S. Dist. LEXIS 79151, at *20-21 (S.D.N.Y. Oct. 25, 2007). Specifically, the court noted that he would be permitted:

> to testify with regard to the commencement of the criminal prosecution against plaintiff and the reason the prosecution was terminated. [He] also will be permitted to explain the statute relied upon in dismissing plaintiff's case, section 30.30 of the New York Criminal Procedure Law.

Id. We respectfully submit that no principled distinction can be drawn between Williams and the instant case, and Ms. Ricks' testimony is therefore entirely appropriate.

Furthermore, Defendants' current attempt to preclude the testimony of Ms. Ricks is disingenuous, given that the necessity to call her is premised almost entirely on Defendants refusal to agree to certain proposed stipulations of law and fact that potentially could have obviated the need to call Ms. Ricks. Despite the fact that Plaintiff proposed several such stipulations on February 11, 2010[9], Defendants declined to adopt them, declined to point out any specific deficiencies therein, and failed to offer any counterproposal to attempt to obviate the need to call Ms. Ricks. Defendants' attempt to now preclude Ms. Ricks' testimony should be denied.[10]

## VI. DEFENDANTS ARE NOT ENTITLED TO AN ADVERSE INFERENCE CHARGE REGARDING THE PHOTOGRAPHS OF PLAINTIFF'S INJURIES.

A party seeking an adverse inference instruction based on the destruction of evidence must establish that (1) the party having control over the evidence had an obligation to

[9] Plaintiff's proposed stipulations included:

(20) During the July 17, 2006 proceeding related to Mr. Robertson's April 15, 2006 arrest, the criminal charges related to that arrest were dismissed pursuant to N.Y. Crim. Proc. Law § 30.30, which requires that criminal charges be dismissed within 90 days if the state fails to prosecute those charges.

(21) In order to avoid dismissal under N.Y. Crim. Proc. Law § 30.30, the state was required to be ready for trial on the charges against Mr. Robertson within 90 days of the date those charges were commenced.

(22) In order to be ready for trial, the state is required to provide a corroborating affidavit from one of the arresting officers. In the context of a drug charge, the state is also required to provide a laboratory report indicating that the substance in question is in fact a controlled substance.

[10] Contrary to Defendants' suggestion (Def.'s Br. at 18 n.10) we do not anticipate that Ms. Ricks will be testifying on the basis of any information contained in her own privileged notes regarding Mr. Robertson's criminal proceeding. We intend to elicit testimony from Ms. Ricks only concerning documents produced in discovery in this matter, which contain all of the information necessary to refresh Ms. Ricks' recollection, if necessary at all, on the matters upon which she will testify.

preserve it at the time it was destroyed; (2) that the records were destroyed "with a culpable state of mind"; and (3) that the destroyed evidence was "relevant" to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense. Byrnie v. Town of Cromwell, 243 F.3d 93, 107-12 (2d Cir. 2001). Although the "culpable state of mind" may be established by ordinary negligence, in Reilly v. Natwest Markets Group, the Second Circuit held that a fact intensive "case-by-case approach to the failure to produce evidence" was appropriate. Reilly, 181 F.3d 253, 267 (2d Cir. 1999).

Defendants' assertion that they are entitled to an adverse inference jury charge disregards both the facts and the relevant caselaw and should be denied.

First, the photographs that were previously in Plaintiff's possession were not destroyed with the culpable state of mind necessary to justify an adverse inference charge in these circumstances. The photographs in question were taken by Mr. Robertson's friend's niece two days after the incident in question. See Brooks Decl. Ex. J at 177:25-178:22; Brooks Decl. Ex. M at 235:10-11. Mr. Robertson testified that he was in possession of hard copies of those photographs in April of 2006 – they were in his mother's apartment at 3002 Surf Avenue. See Brooks Decl. Ex. J at 178:5-8; Brooks Decl. Ex. M at 234:16-235:4. Between April 2006 and today, Mr. Robertson's parole was revoked and he was incarcerated. When he was released, he could not find the photographs where he had left them in his mother's apartment. Id. Mr. Robertson's behavior was neither negligent nor evidences the kind of bad faith that ordinarily accompanies an adverse inference charge.

Second, even if this Court were to find that the photographs were destroyed or misplaced as a result of Mr. Robertson's ordinary negligence, Defendants have not adduced evidence to support a finding of "relevance" necessary to justify an adverse inference charge.

When destruction of evidence is merely negligent, the party seeking the sanctions must prove relevance. Residential Funding Corp. v. DeGeorge Fin. Corp., 306 F.3d 99, 109 (2d Cir. 2002). "Relevance" in this context does not mean merely sufficiently probative to satisfy Rule 401. Instead, the party seeking the adverse inference must adduce sufficient evidence from which a reasonable trier of fact could infer that the destroyed evidence would have been favorable to that party. Residential, 306 F.3d at 108-09. Defendants have adduced no such evidence here. Indeed, the fact that Plaintiff had a friend take photographs of his injuries tends to support the opposite inference.

Third, there is no prejudice to Defendants, because a photograph taken of Plaintiff following the incident has been produced.[11] Jacob v. City of New York, 07-CV-04141, 2009 WL 383752 at *1 (E.D.N.Y Feb. 6, 1009) (spoliation sanctions inappropriate where copy of destroyed 911 tape was obtained from a different source than the Defendant); Reilly, 181 F.3d at 267 (spoliation analysis must be made on case by case basis, and sanctions tailored to insure that spoliators do not benefit from their wrongdoing).

[11] Plaintiff has listed as PX 25 and as part of PX 26, the mug shot taken of Mr. Robertson in connection with his April 14, 2006 arrest. Although the New York Police Department destroyed the original photograph pursuant to N.Y. Crim. Proc. Law §160.50, a copy was retained in the criminal court file related to the arrest.

Confidential - Filed Under Seal

## VIII. THE MAP AND PHOTOGRAPHS OF THE SCENE OF PLAINTIFF'S ARREST SHOULD BE ADMITTED.

Defendants ask the Court to preclude Plaintiff's use in evidence of a map and photographs of the scene of Plaintiff's arrest (Plaintiff's Proposed Exhibits PX29 to PX39, Brooks Decl. Ex. N) on the purported grounds that they are prejudicial and would mislead the jury.

As with other types of evidence, the general rule is that "photographs are admissible if they tend to prove or disprove a disputed or material issue, to illustrate or elucidate other relevant evidence, or to corroborate or disprove some other evidence offered or to be offered." Jamison v. Grier, 01 Civ. 6678, 2002 U.S. Dist. LEXIS 1160, at *58-59 (S.D.N.Y. Jan. 25, 2002). Here, the map and photographs will, among other things, (1) assist the jury to visualize the scene of Mr. Robertson's arrest; (2) allow witnesses to pinpoint with greater precision their relative locations during the night of April 14, 2006; (3) illustrate generally the distance from which Defendants claim to have made the observations that underlie their claim of

probable cause; and (4) demonstrate the potential locations of the sewer drain in which Defendants purport to have recovered a quantity of marijuana—one of the central disputed factual issues in this matter—and their relation to the trajectory of Mr. Robertson's flight from the officers. In light of the palpable relevance of the map and photographs to these important issues, Defendants' objections to the admission of these exhibits should be overruled.

Defendants' primary objection is that the photographs (and the satellite image in the map) were taken during the day, whereas it is undisputed that the events in question occurred at night. Courts in New York uniformly have held, however, that a difference in lighting conditions in a photograph goes to the weight of the evidence, not to its admissibility. Jamison, 2002 U.S. Dist. LEXIS 1160, at *60; People v. Mathison, 732 N.Y.S.2d 2, 3 (N.Y. App. Div. 2001). Moreover, courts routinely deal with such differences in lighting conditions by simply informing the jury of their existence. People v. Rodriguez, 718 N.Y.S.2d 32, 33 (N.Y. App. Div. 2000) (magnified photograph was properly admitted because, among other things, "the jury was made aware that the photographs were taken under different lighting conditions than the incident"); People v. Johnson, 682 N.Y.S.2d 143, 144 (N.Y. App. Div. 1998) ("[T]he jury was clearly made aware that the photographs were taken in daylight whereas the incident occurred at night."). Finally, Defendants' suggestion that the lighting conditions in these photographs could prejudice the Defendants in this matter is contrary to logic. In fact, the presence of daylight could only have made it *easier* for Defendants to make the observations upon which they premise their claim of probable cause, and these photographs therefore can work no prejudice upon them.

Defendants also object on the ground that the photographs lack a date and time stamp such that "Defendants are unable to determine whether the photographs can accurately depict the scene of Plaintiff's arrest as it was in April of 2006". This objection too is without

merit. First, if the map and photographs are admitted, Plaintiff and Defendants will have ample opportunity to testify as to whether these exhibits comport with their recollection of the scene at the time of the events in question. Second, Plaintiff does not seek to use the map and photographs to illustrate some highly transitory aspect of the scene, such as the color of a particular building or the way the light shines on a particular spot. Instead, Plaintiff intends to use the photographs to demonstrate the general layout of the scene, the distance between various points therein, and other aspects that are not susceptible to have changed drastically—or at all—since 2006. Therefore, the map and the photographs should be admitted.[12]

Finally, to the extent that Defendants lodge additional objections to certain features of the satellite image obtained from Google Maps (PX29)—an application with which many of the jurors may already be familiar—those objections readily can be dealt with by instructing the jury that those features of the map lack the significance that Defendants fear the jury will incorrectly attribute to them.

## IX. PLAINTIFF'S CONFIDENTIALITY DESIGNATIONS ARE APPROPRIATE.

Defendants also ask the Court for a blanket declaration that all of Plaintiff's confidentiality designations pursuant to the December 8, 2009 Confidentiality Stipulation and Protective Order (the "Confidentiality Stipulation") in this matter should be nullified. Defendants cite a wealth of inapplicable case law—among others, cases dealing with waiver of the attorney-client privilege—to address an issue that is exceedingly simple.

[12] Defendants also object on the ground that a number of the photographs lack any indicia that they were taken in the vicinity of Plaintiff's arrest. To the extent that Defendants refuse to stipulate to these and any other foundational elements of the photographs, Plaintiff stands ready to procure the testimony of a legal assistant at Cravath who was present when the photographs were taken and can testify as to what they depict.

There is nothing inappropriate about Plaintiff's confidentiality designations in this matter. The Confidentiality Stipulation, which Defendants freely entered into, and which was so-ordered by the Court, plainly provides that Plaintiff may designate as "confidential" documents "containing non-pubic personal or medical information that Plaintiff in good faith deems" confidential. There is no question that Plaintiff's parole records and rap sheet, both of which contain his social security number, and Plaintiff's medical records—which indeed contain non-public medical information—meet the standard set forth in the Confidentiality Stipulation.

Nevertheless, in the interest of conducting trial efficiently—and subject to any other objections contained in Plaintiff's motions in limine or in this opposition to Defendants' motions in limine—Plaintiff does not object to the public filing or use at trial of otherwise admissible documents that he has designated as confidential, provided that Defendants redact all instances of Plaintiff's social security number therein, and provided that Defendants do not object to the similar treatment of documents that they themselves have designated as confidential.[13]

## X. THE COURT SHOULD NOT BE PRECLUDED FROM MENTIONING THAT THE COUNSEL FOR DEFENDANTS ARE FROM THE OFFICE OF THE CORPORATION COUNSEL.

Plaintiff has no objection to changing the caption to remove the City of New York and to prohibiting either party from stating that the City was previously a Defendant in this action. However, because it is highly unlikely that that the mere mentioning of Corporation

[13] With respect to Plaintiff's medical records, we explain in Section IV, supra, why certain of those records are irrelevant to any of the issues in this case and contain highly confidential, personal medical information that can only be intended to harass and embarrass Plaintiff and/or to prejudice the jury against him. We do not hereby waive any claim of confidentiality with respect to those documents.

Counsel will cause any prejudice to Defendants, it would be odd to identify Defendants' attorneys by name without reference to for whom they work precluding any mention that Defendants' lawyers are from the Corporation Counsel and such reference should not be precluded. Williams, 2007 U.S. Dist. LEXIS 79151 at *24.

**XI. PLAINTIFF SHOULD NOT BE PRECLUDED FROM OFFERING EVIDENCE OF THE CITY'S POTENTIAL INDEMNIFICATION OF DEFENDANT POLICE OFFICERS.**

Plaintiff does not seek to admit evidence regarding the City's indemnification of the Defendant Officers in his case in chief. However, if Defendants open the door by proffering evidence of their financial resources or otherwise putting their ability to pay damages in issue, evidence of indemnity can and should be admitted. Mathie v. Fries , 121 F.3d 808, 816 (2d Cir.1997) ("a fact finder can properly consider the existence of [an indemnity] agreement as obviating the need to determine whether a Defendant's limited financial resources justifies some reduction in the amount that would otherwise be awarded."); Scherer v. City of New York, No. 03 Civ. 8445, 2007 WL 2710100, *9 (S.D.N.Y. Sep 07, 2007) (evidence of indemnification allowed on cross if Defendants made financial resources an issue on direct); Tatum v. City of New York , No. 06-CV-4290, 2009 WL 1748044, *7 (S.D.N.Y. Jun 19, 2009). See also Lawson v. Trowbridge , 153 F.3d 368, 379-80 (7th cir. 1998) (abuse of discretion where district court refused to allow Plaintiff to rebut Defendants' financial testimony with evidence concerning likely indemnification)

Defendants' argument that a final decision regarding indemnification is not made until after a judgment is reached is irrelevant. Indeed, in Dallas, a case on which Defendants rely, evidence of the likelihood of indemnification held to be probative and admissible, even where the fact of indemnification was not certain. Dallas v. Goldberg , No. 95 Civ. 9076, 2002 WL 1013291(S.D.N.Y. May 20, 2002).

**CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that Defendants' Motions In Limine be denied.

Dated: February 25, 2010

CRAVATH, SWAINE & MOORE LLP,

by Jessica R. Holloway

Stuart W. Gold
Jessica R. Holloway
Hector J. Valdes

Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
(212) 474-1000
jholloway@cravath.com

*Attorneys for Plaintiff Dwayne Kinte Robertson*