UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

DWAYNE KINTE ROBERTSON

                                    Plaintiff,

                vs.

OFFICER MATTHEW SULLIVAN, Shield
#29723; OFFICER NILES PRINCE, Shield
#22353; and SERGEANT DIMITRI DAGLAS,
Shield #01647

                                    Defendants.

07-CV-1416 (JG)(LB)

**ECF CASE**

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION FOR
ATTORNEYS' FEES AND COSTS**

CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
*Attorneys for Plaintiff Dwayne Kinte Robertson*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT ..............................................................................................................................2

I.  PLAINTIFF IS THE PREVAILING PARTY IN THIS LITIGATION AND
    THEREFORE IS ENTITLED TO AN AWARD OF REASONABLE ATTORNEYS'
    FEES. ..............................................................................................................................2

II. THE REQUESTED ATTORNEYS' FEES ARE REASONABLE.....................................3

    A.  The Hourly Rates Sought are Reasonable. ...........................................................4

        1.  The Requested Hourly Rates Are in Line With Market Rates in the
            Southern District of New York.................................................................5

        2.  Application of the <u>Johnson</u> Factors Further Supports the Reasonableness
            of the Requested Hourly Rates. ...............................................................8

    B.  The Number of Hours Expended Litigating This Case is Reasonable. ................12

    C.  No Adjustment to the Presumptively Reasonable Fee is Necessary.....................15

III. PLAINTIFF IS ALSO ENTITLED TO REASONABLE COSTS. ...................................16

IV. THE PRISONER LITIGATION REFORM ACT'S CAP ON ATTORNEYS' FEES
    SHOULD NOT APPLY IN THIS ACTION. ...................................................................17

V.  IF THE PLRA CAP DOES APPLY, PLAINTIFF SHOULD RECEIVE THE
    MAXIMUM AWARD ALLOWABLE PURSUANT TO THAT STATUTE. .................19

CONCLUSION..........................................................................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Adorno v. Port Auth. of N.Y. & N.J., 06-CV-593, 2010 U.S. Dist. LEXIS 14692
(S.D.N.Y. Feb. 19, 2010) ................................................................................................7

Arbor Hill Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d 182
(2d Cir. 2008) ..................................................................................................... *passim*

Baird v. Boies, Schiller & Flexner LLP, 219 F. Supp. 2d 510 (S.D.N.Y. 2002) ..........................16

Boesing v. Hunter, 540 F.3d 886 (8th Cir. 2008) ..........................................................19

Boston Sand Co. v. United States, 278 U.S. 41 (1928) ...................................................17

City of Riverside v. Rivera, 477 U.S. 561 (1986) .......................................................2, 4

In re Continental Illinois Sec. Litig., 962 F.2d 566 (7th Cir. 1992) ................................8

Crooks v. Harrelson, 282 U.S. 55 (1930) .................................................................17

Farrar v. Hobby, 506 U.S. 103 (1992) ....................................................................15

Gierlinger v. Gleason, 160 F.3d 858 (2d Cir. 1998) .......................................................5

Gusman v. Unisys Corp., 986 F.2d 1146 (7th Cir. 1993) .....................................................8

Grant v. Martinez, 973 F.2d 96 (2d Cir. 1992) .........................................................12, 13

Hensley v. Eckerhart, 461 U.S. 424 (1983) ..............................................................3, 12

Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974) ....................................5

Kassim v. City of Schenectady, 415 F.3d 246 (2d Cir. 2005) .................................................4

LeBlanc Sternberg v. Fletcher, 143 F.3d 748 (2d Cir. 1998) ...............................................16

Morris v. Eversley, 343 F. Supp. 2d 234 (S.D.N.Y. 2004) ..................................................17

Morrison v. Davis, 88 F. Supp. 2d 799 (S.D. Ohio 2000) ...................................................19

Mugavero v. Arms Acres, Inc., 03-CV-5724, 2010 U.S. Dist. LEXIS 11210
(S.D.N.Y. Feb. 9, 2010) .............................................................................3, 15

Murphy v. Gilman, Nos. 03-145, 04-103, 2008 U.S. Dist. LEXIS 106928
(W.D. Mich. May 20, 2008) ................................................................................20

*Ortiz v. McBride*, 380 F.3d 649 (2d Cir. 2007) ...................................................................18

*Parker v. Conway*, 581 F.3d 198 (3d Cir. 2009) ..................................................................19

*Perez v. Westchester County Dep't of Corr.*, 587 F.3d 143 (2d Cir. 2009).......................17

*Quaratino v. Tiffany & Co.*, 166 F.3d 422 (2d Cir. 1999).....................................................4

*Reichman v. Bonsignore, Brignati & Mazzotta P.C.*, 818 F.2d 278 (2d Cir. 1987).....................16

*Robinson v. City of New York*,
   05 Civ. 9545, 2009 U.S. Dist. LEXIS 89981 (S.D.N.Y. Sept. 29, 2009) .............................6, 7

*Rozell v. Ross-Holst*, 576 F. Supp. 2d 527 (S.D.N.Y. 2008) ...........................................7

*Siggers-El v. Barlow*, 433 F. Supp. 2d 811 (E.D. Mich. 2006).....................................20

*Sutton v. Smith*
   No. AW-98-2111, 2001 U.S. Dist. LEXIS 9011 (D. Md. June 26, 2001)..............................20

*Teamsters Local 814 Welfare Fund v. Dahill Moving & Storage Co.*, 545 F. Supp. 2d 260
   (E.D.N.Y. 2008)............................................................................................6, 7

*Torres v. Walker*, 356 F.3d 238 (2d Cir. 2004) .........................................................17

*Vilkhu v. City of New York*, 06-CV-2095, 2009 U.S. Dist. LEXIS 73696 (E.D.N.Y. June
   25, 2009) ................................................................................................ *passim*

**Statutes and Rules**

42 U.S.C. § 1988............................................................................................2

42 U.S.C. § 1997e(d) .................................................................................17, 19

Local Civil Rule 54.1 ....................................................................................16

Fed. R. Civ. Proc. 54(d)(1) .........................................................................16

Fed. R. Civ. Proc. 68...................................................................................11

## PRELIMINARY STATEMENT

Plaintiff Dwayne Robertson filed this action *pro se* alleging that, late on the night of April 14, 2006, Defendant police officers Niles Prince, Matthew Sullivan and Sergeant Dimitri Deglas of the NYPD ("Defendants") stopped and falsely arrested him without cause, struck him in the head with a baton while he lay prone and handcuffed on the ground, and maliciously initiated criminal proceedings against him without basis.  Defendants disputed almost every aspect of Mr. Robertson's version of the events in question.  On October 2, 2009, having denied the Defendants' motion for summary judgment, the Court appointed Cravath Swaine & Moore LLP ("Cravath") to represent Mr. Robertson in this matter.

From the beginning, this case presented substantial challenges.  At the time Cravath was appointed, Mr. Robertson had already been deposed in this matter and made certain admissions that were potentially harmful to his case, including that he may have smoked marijuana on the day of the events in question.  Mr. Robertson also had a lengthy criminal record and suffered from a history of psychological issues.  In a case where credibility was crucial, Cravath was tasked with convincing a jury to credit the version of events set forth by Mr. Robertson over that of three members of the NYPD with largely unblemished records.

From the time of its appointment in October 2009 through the end of trial in early March 2010, Cravath litigated this case effectively and efficiently.  Utilizing a core team of three attorneys, Cravath, among other things, conducted a factual investigation, undertook and responded to discovery requests regarding Plaintiff's claims, deposed each of the three Defendants and the doctor who treated Mr. Robertson on the evening in question, and participated in numerous conferences with Magistrate Judge Bloom to resolve discovery disputes, all on an expedited basis.  In the weeks leading up to the March 1, 2010 trial date, the Cravath team expended substantial effort to prepare this case for trial, including researching and

drafting each of the elements of the required pre-trial order and briefing the eleven motions *in limine* filed by Defendants.  During the trial and in the days immediately prior, the Cravath team worked around the clock to prepare and present the evidence effectively and to afford Mr. Robertson the greatest chance possible to succeed on the claims alleged.

On March 3, 2010, after a three-day trial, the jury rendered a unanimous verdict for Mr. Robertson on each and every one of the claims he asserted, finding each of the Defendants liable for violating Mr. Robertson's constitutional rights and awarding him $5,000 in compensatory damages and $50,000 in punitive damages.  As the prevailing party in this litigation, Mr. Robertson now moves pursuant to 42 U.S.C. § 1988 for an award of attorneys fees in the amount of $585,425 and costs in the amount of $38,439.58.[1]  While the requested fees are significant, they represent a substantial reduction from the actual hours spent and rates charged to Cravath's paying clients.  Moreover, in securing a verdict in a police misconduct case, the firm also contributes value to the public in deterring such conduct in the future.  See City of Riverside v. Rivera, 477 U.S. 561, 575 (1986).

## ARGUMENT

## I.    PLAINTIFF IS THE PREVAILING PARTY IN THIS LITIGATION AND THEREFORE IS ENTITLED TO AN AWARD OF REASONABLE ATTORNEYS' FEES.

42 U.S.C. § 1988 provides that "[i]n any action or proceeding to enforce a provision of section[] . . . 1983 [of this title] . . . the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs."  While the statute invokes the court's discretion, there is a presumption that prevailing civil rights plaintiffs should recover

---

[1] Plaintiff expressly reserves the right to seek additional fees and costs for his counsel's work on the instant fee application, any other post-trial litigation and any appeals in this matter.

2

reasonable attorneys' fees, unless special circumstances would render such an award unjust.  See Hensley v. Eckerhart, 461 U.S. 424, 429 (1983).

A plaintiff is considered the "prevailing party" if he "succeed[s] on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit".  Id. at 433.  Here, Mr. Robertson unquestionably meets that standard as the jury rendered a verdict in his favor on every one of the claims he asserted and awarded him $5,000 in compensatory damages and $50,000 in punitive damages.

## II.      THE REQUESTED ATTORNEYS' FEES ARE REASONABLE.

In calculating reasonable attorneys' fees, courts in this district are guided by the Second Circuit's recent opinion in Arbor Hill Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d 182 (2d Cir. 2008).  In Arbor Hill, the Court of Appeals moved away from the traditional use of the "lodestar" method of calculation in favor of calculating what it termed the "presumptively reasonable fee".  Id. at 190.  To calculate the presumptively reasonable fee, a court should first determine a reasonable hourly rate, which that Court defined as "the rate a paying client would be willing to pay".  Id.  Next, the court should multiply that hourly rate by the number of hours "reasonably expended litigating the case" to determine the "presumptively reasonable fee".  Vilkhu v. City of New York, 06-CV-2095, 2009 U.S. Dist. LEXIS 73696, at *4 (E.D.N.Y. June 25, 2009); see also Arbor Hill, 522 F.3d at 190.  Following determination of the presumptively reasonable fee, the court should consider whether that amount must be adjusted based on factors such as the extent of plaintiff's success in the litigation.  See Mugavero v. Arms Acres, Inc., 03-CV-5724, 2010 U.S. Dist. LEXIS 11210, at *10 (S.D.N.Y. Feb. 9, 2010).  While a court may adjust the presumptively reasonable fee amount, there remains a strong presumption throughout the fee determination process that the initial calculation represents a reasonable fee. Id. at *11.

In determining a reasonable fee, a court must also bear in mind the well-settled principle that an appropriate award under Section 1988 need not be proportional to the damages recovered in the underlying litigation.  As the Court of Appeals stated:

> [Section] 1988 was enacted in part to secure legal representation for plaintiffs whose constitutional injury was too small, in terms of expected monetary recovery, to create an incentive for attorneys to take the case under conventional fee arrangements.  Reasoning that a rule calling for proportionality between the fee and the monetary amount involved in the litigation would effectively prevent plaintiffs from obtaining counsel in cases where deprivation of a constitutional right caused injury of a low monetary value, we have repeatedly rejected the notion that a fee may be reduced merely because the fee would be disproportionate to the financial interest at stake in the litigation. . . . If the district court reduced the fee in the belief that the claimed hours were simply disproportionate in a case involving a $2500 injury, without regard to the reasonableness of the attorney's expenditure of time in responding to the particular circumstances, this was error.

Kassim v. City of Schenectady, 415 F.3d 246, 252 (2d Cir. 2005); see also City of Riverside, 477 U.S. at 575 ("Because damages awards do not reflect fully the public benefit advanced by civil rights litigation, Congress did not intend for fees in civil rights cases, unlike most private law cases, to depend on obtaining substantial monetary relief."); Quaratino v. Tiffany & Co., 166 F.3d 422, 424 (2d Cir. 1999) (rejecting a "billing judgment" rule that would limit the awardable fee to one rationally related to the recovery that could be expected ex ante).  Thus, the fact that a plaintiff's requested fee exceeds the damages award in the underlying matter should have limited significance.  See, e.g., Vilkhu, 2009 U.S. Dist. LEXIS 73696 (awarding $671,056.80 in attorneys' fees upon a verdict of only $20,000 in compensatory damages).

**A.      The Hourly Rates Sought are Reasonable.**

In determining the reasonable hourly rate to be used in calculating the presumptively reasonable fee, the Second Circuit has instructed the district courts to "bear in mind all of the case-specific variables that we and other courts have identified as relevant to the reasonableness of attorney's fees".  Arbor Hill, 522 F.3d at 190.  The relevant factors include,

4

among other things, the case-specific variables set forth in <u>Johnson v. Georgia Highway Express, Inc.</u>, 488 F.2d 714 (5th Cir. 1974) (the "<u>Johnson</u> factors")[2], as well as the rates "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation". <u>Gierlinger v. Gleason</u>, 160 F.3d 858, 882 (2d Cir. 1998).

As set forth in detail in the accompanying Holloway Declaration, Plaintiff requests the following hourly rates for work performed by his attorneys and their staff:

| NAME | POSITION | HOURLY RATE |
|---|---|---|
| Stuart Gold | Partner | $525 |
| Jessica Holloway | Senior Associate | $400 |
| Hector Valdes | Associate | $350 |
| Gabriel Soledad | Associate | $300 |
| Elaine Baird | Courtroom Presentation Technical Specialist | $250 |
| Eleanor Dorfman | Paralegal | $125 |
| Constantinos Stavrakis | Paralegal | $125 |
| Meredith Applegate | Paralegal | $125 |

(Holloway Decl. ¶ 12-15.)  Applying the relevant factors to the circumstances of this case demonstrates that the hourly rates sought are reasonable.

> 1. **The Requested Hourly Rates Are in Line With Market Rates in the Southern District of New York.**

The Second Circuit has explained that the relevant "community" for purposes of comparing prevailing market rates is the district in which the district court sits—here, the Eastern District of New York. <u>Arbor Hill</u>, 522 F.3d at 190.  However, a district court may utilize an out-

---

[2] The twelve Johnson factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.  <u>Arbor Hill</u>, 522 F.3d at 187 n.3.

of-district rate—here, the prevailing rates in the Southern District of New York, where Cravath is located—"to account for a plaintiff's reasonable decision to retain out-of-district counsel", just as it may adjust the base hourly rate to account for other case-specific variables.  Teamsters Local 814 Welfare Fund v. Dahill Moving & Storage Co., 545 F. Supp. 2d 260, 265-66 (E.D.N.Y. 2008); see also Arbor Hill, 522 F.3d at 191.  In deciding whether to use out-of-district rates, the court should look to "what a reasonable, paying client would be willing to pay to have the case litigated efficiently".  Teamsters, 545 F. Supp. 2d at 266.[3]

Here, the Court itself deemed it appropriate to appoint a firm located in the Southern District of New York to represent Mr. Robertson.  The key issues in this case were intensely factual in nature, with success or failure likely turning on the credibility of witnesses— meaning that the cross-examination of the three Defendants would be critical—and the quality of the presentation of evidence at trial.  See, e.g., Robinson v. City of New York, 05 Civ. 9545, 2009 U.S. Dist. LEXIS 89981, *15-16 (S.D.N.Y. Sept. 29, 2009) (holding that where the complexity of the case was almost entirely logistical and factual, the attorneys' general litigation experience was "wholly transferable and relevant").  Moreover, the appointment of counsel was made after the Court's ruling on Defendants' summary judgment motion over two years in to the case.  A reasonable client, or court, would reasonably believe that retaining a Southern District firm like Cravath with extensive trial experience and the resources to handle the case on an expedited basis was necessary to afford the client a realistic chance of succeeding on his claims.

---

[3] Notably, the hourly rates that Cravath seeks here represent a substantial discount (approximately 40%) below the rates that Cravath's regular clients pay the firm for representation in a variety of high-stakes litigation.  Had the Cravath team applied their customary hourly rates to the time for which reimbursement is sought, the total fee for the lawyers' time alone would have exceeded $900,000.  This reduction also should be sufficient to accommodate any consideration that Cravath was acting as pro bono counsel to Mr. Robertson.

Moreover, while Cravath certainly does not specialize in civil rights litigation, Mr. Gold himself has previously represented clients in at least three such matters, and Cravath collectively has handled numerous civil rights cases in the recent past.  (Holloway Declaration at ¶¶ 25, 29.) Under these circumstances, it would have been entirely reasonable for a paying client to retain a firm like Cravath located in the Southern District of New York in this matter, particularly given that district's close proximity to the courthouse where this case was tried.  See Teamsters, 545 F. Supp. 2d at 266.  As such, it is appropriate to utilize rates prevailing in the Southern District of New York to determine the reasonableness of the hourly rates requested herein.

    The hourly rates sought are squarely within the range of hourly rates that have been approved in recent cases applying rates prevailing in the Southern District.  Courts in that district routinely have approved awards in civil rights cases over the past ten years in the range of $250 to $600 for partners, and $200 to $350 for associates, with average awards increasing over time.  Adorno v. Port Auth. of N.Y. & N.J., 06-CV-593, 2010 U.S. Dist. LEXIS 14692, at *12 n.2 (S.D.N.Y. Feb. 19, 2010); see also Robinson, 2009 U.S. Dist. LEXIS 89981, at *13-14 (approving attorneys' hourly rates ranging from $185 to $500); Vilkhu, 2009 U.S. Dist. LEXIS 73696, at *19-30 (E.D.N.Y. June 25, 2009) (utilizing prevailing Southern District rates in approving hourly rates of $400 to $525 for partners in civil rights action); Rozell v. Ross-Holst, 576 F. Supp. 2d 527, 545-46 (S.D.N.Y. 2008) (applying hourly rates of $600 for partners, $350 for senior associates, $250 for junior associates, and $125 for paralegals).  Indeed, in the recent Vilkhu matter, plaintiff provided direct evidence—in the form of affidavits from lawyers in the community—of the current prevailing market rates in the Southern District of New York for civil

rights actions of this nature, which rates are in line with those requested here.[4]  Vilkhu, 2009

U.S. Dist. LEXIS 73696, at *15-16.  Therefore, the requested hourly rates should be utilized in

calculating the presumptively reasonable fee.

>    **2.    Application of the Johnson Factors Further Supports the
>           Reasonableness of the Requested Hourly Rates.**

Application of the Johnson factors likewise compels a finding that the hourly rates

sought are reasonable:

(1)    The Time and Labor Required:  The fact-intensive nature of this matter required

the expenditure of a great deal of time and effort in identifying and developing the factual

inconsistencies that ultimately convinced the jury to disbelieve the version of events posited by

Defendants in this matter.  Moreover, Mr. Robertson's psychological issues, his difficulty

understanding and explaining many aspects of his extensive criminal and medical history and

records, and his inability to meet regularly with his attorneys made it difficult to marshal

evidence and develop the facts to corroborate Mr. Robertson's claims, as well as to respond

appropriately to Defendants' requests for documents and information.  As a result, his attorneys

spent considerable time conducting factual investigations and speaking to potential witnesses

without the guidance and assistance that a typical client may otherwise have been able to

---

[4] As Judge Posner explained in reversing a district court opinion that refused to apply counsel's prevailing market rates:  "It is apparent what the district judge's mistake was.  He thought he knew the value of the class lawyers' services better than the market did.  What the market valued at $350 he thought worth only half as much . . . [I]t is not the function of judges in fee litigation to determine the equivalent of the medieval just price.  It is to determine what the lawyer would receive if the were selling his services in the market rather than being paid by court order."  In re Continental Illinois Sec. Litig., 962 F.2d 566, 568 (7th Cir. 1992); see also Gusman v. Unisys Corp., 986 F.2d 1146, 1150-51 (7th Cir. 1993) ("[T]he best measure of the cost of an attorney's time is what the attorney could earn from paying clients . . . A judge who departs from this presumptive rate must have some reason other than the ability to identify a different average rate in the community.").

provide.  In addition, the case was hard fought by Defendants' counsel at the New York City

Law Department, requiring five discovery conferences with Magistrate Judge Bloom and

requiring Plaintiff to respond to eleven motions *in limine* filed by Defendants. (Holloway Decl.

¶¶ 8, 10.)

(2)     The Novelty and Difficulty of the Questions:  Although this matter did not present

significant novel legal questions, the factual issues in this case were far from simple.  Because

there were no eyewitnesses to the events in question other than the Plaintiff and the Defendant

police officers who denied all wrongdoing, and little evidence of devastating physical injuries,

the proof had to be drawn together painstakingly through a review of various records—Mr.

Robertson's medical and parole records, files relating to the criminal proceedings against him,

and the Defendants' arrest reports, property vouchers and memo books, among other records—

and through the deposition testimony of the parties and non-parties in this action.

(3)     The Level of Skill Required to Perform the Legal Services Properly:  This case

presented significant difficulties that required Plaintiff's counsel to exercise considerable skill in

order to obtain the verdict the jury ultimately rendered.  In a case where the credibility of the

Plaintiff and Defendants was of paramount importance, Plaintiff's counsel was tasked with

convincing a jury to credit the testimony of an individual with a long criminal record, more than

twenty arrests (as came out at trial on Mr. Robertson's cross), a history of psychological

problems—and who admitted that he may have smoked marijuana in the day or so immediately

prior to the events in question—over that of three apparently distinguished members of the

NYPD.  Counsel's appointment also occurred after Plaintiff had already been deposed once in

this matter without any counsel present and had made admissions that were potentially damaging

9

to his case.  In the end, the jury returned a verdict for Plaintiff on all claims, and registered its displeasure with Defendants by awarding substantial punitive damages.

(4)     <u>The Preclusion of Employment by the Attorney Due to Acceptance of the Case</u>: Because of the significant amount of time expended in preparing this matter for trial, Mr. Gold, Ms. Holloway and Mr. Valdes were unable, during the most intense periods of litigating this case, to take on certain paying matters that they would otherwise undertake.  (Holloway Decl. ¶ 20.)

(5)     <u>The Attorneys' Customary Hourly Rate</u>:  Plaintiff's attorneys' customary hourly rates significantly exceed the rates sought in this fee application.  Mr. Gold's customary hourly rate charged to paying clients of the firm is $975; Ms. Holloway's customary rate is $655; Mr. Valdes' customary rate is $620; and Mr. Soledad's customary hourly rate before he departed the firm in January 2010 was $590.  (Holloway Decl. ¶¶ 30, 35, 39, 43.)

(6)     <u>Whether the Fee is Fixed or Contingent</u>:  Cravath's work on this matter commenced when the firm was asked by this Court and agreed to represent Mr. Robertson on a pro bono basis.  As in most civil rights actions, Cravath relied on the fee-shifting provision of Section 1988 to provide it with compensation for the services rendered should Plaintiff prevail. There was no provision for Mr. Robertson to pay his attorneys any fees or cover their expenses unless and until such fees and expenses were awarded by the Court.  (Holloway Decl. ¶ 7.)

(7)     <u>Time Limitations Imposed by the Clients or the Circumstances</u>:  The time limitations imposed by the circumstances of this case were significant, as Plaintiff's counsel was appointed fairly late in the process (after a decision on summary judgment) and was tasked with conducting discovery and preparing for trial within an expedited timeframe.

(8)     The Amount Involved in the Case and the Results Obtained:  Plaintiff obtained a definitive finding that Defendants violated his constitutional rights and must pay him $5,000 in compensatory damages and $50,000 in punitive damages.  Notably, that total award was more than double that which Defendants' had proposed in a Rule 68 offer of judgment prior to trial.[5] (Holloway Decl. ¶ 9.)  Moreover, the relationship between the compensatory and punitive awards is significant, as it demonstrates that while the jury found that Plaintiff suffered relatively little verifiable, compensable harm as a result of Defendants' actions, Plaintiff's counsel so thoroughly impeached the credibility of Defendants that the jury felt compelled to punish Defendants for their outrageous conduct with a significant award of punitive damages.  This result also furthers the deterrent value of enforcement of the civil rights laws.

(9)     The Experience, Reputation and Ability of the Attorneys:  As set forth in the accompanying Holloway Declaration, Cravath is one of the nation's preeminent law firms with extensive litigation experience, and all of the attorneys who worked on this matter have both exemplary credentials and litigation experience.  (Holloway Decl. ¶¶ 24-44.)

(10)    The "Undesirability" of the Case:  Suing the police department is always to some extent undesirable in the public mind.  Suing the NYPD when there are no eyewitness, little evidence of devastating physical injury, and a client with a history of criminal infractions and psychological problems made this case particularly risky and therefore undesirable.  Indeed, prior to Cravath's appointment, Mr. Robertson himself approached at least one firm located in

---

[5] Following Defendants' Rule 68 offer of judgment, and prior to engaging in the substantial pre-trial preparations that account for a substantial portion of the fees sought herein, Plaintiff presented a counteroffer of $175,000 for a global settlement of his claims, including any claim for attorneys' fees.  (Holloway Decl. ¶ 9.)  Defendants rejected that counteroffer and instead decided to proceed to trial.  Based on that decision, Defendants should not now be heard to complain that they are faced with a monetary judgment and a request for attorneys' fees that far exceed the dollar amount for which they could have resolved this litigation at an earlier stage.

the Eastern District about representing him, and that firm declined to take his case. (Holloway Decl. ¶ 2.)

(11)    <u>The Nature and Length of the Professional Relationship with the Client</u>:  Prior to its appointment in this matter, Cravath did not have a preexisting client relationship with Mr. Robertson.  (Holloway Decl. ¶ 2.)  The firm's relationship with Mr. Robertson is not the type of ongoing client relationship that typically would compel a firm to accept reduced hourly rates from that client in exchange for the promise of future business.

(12)    <u>Awards in Similar Cases</u>:  As set forth above, the hourly rate sought is within the range of rates routinely approved in connection with attorneys' fees awards in the Southern District of New York.  <u>See</u> <u>supra</u> pp. 7-8.  In addition, the total fee sought is consistent with the fees awarded in similar cases in this district.  <u>See, e.g.</u>, <u>Vilkhu</u>, 2009 U.S. Dist. LEXIS 73696, at *4, *69 (awarding $671,056.80 in attorneys' fees in a case where plaintiff prevailed on excessive force claims and obtained a verdict of only $20,000 in compensatory damages).

Accordingly, all twelve <u>Johnson</u> factors weigh in favor of awarding Plaintiff the full requested hourly rate.

**B.    The Number of Hours Expended Litigating This Case is Reasonable.**

After assessing the reasonable hourly rate, the court must then determine the number of "hours reasonably expended" on the matter in order to calculate the presumptively reasonable fee.  <u>Vilkhu</u>, 2009 U.S. Dist. LEXIS 73696, at *4.  Hours reasonably expended are those actually expended by counsel less any "excessive, redundant, or otherwise unnecessary" hours.  <u>Hensley</u>, 461 U.S. at 434.  In determining whether hours should be excluded, the inquiry is not based on what effort appears necessary in hindsight, but rather on whether "at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures".  <u>See</u> <u>Grant v. Martinez</u>, 973 F.2d 96, 99 (2d Cir. 1992).

Here, as detailed in the Holloway Declaration and its accompanying exhibits, the work for which fees are sought was necessary and entirely reasonable.  (Holloway Decl. Ex. 1.) Plaintiff seeks reimbursement for the following hours expended by counsel and their staff in litigating this matter:

| NAME | POSITION | HOURS REASONABLY EXPENDED |
|------|----------|---------------------------|
| Stuart Gold | Partner | 116.30 |
| Jessica Holloway | Senior Associate | 693.00 |
| Hector Valdes | Associate | 328.80 |
| Gabriel Soledad | Associate | 236.75 |
| Elaine Baird | Courtroom Presentation Technical Specialist | 84.90 |
| Eleanor Dorfman | Paralegal | 156.20 |
| Constantinos Stavrakis | Paralegal | 129.80 |
| Meredith Applegate | Paralegal | 32.70 |

(Holloway Decl. ¶ 12-15.)  The vast majority of the listed attorney time was spent on performing legal research, conducting document review and other factual investigations, taking, defending and preparing for depositions, resolving discovery disputes (including participating in five conferences with Magistrate Judge Bloom) and drafting associated correspondence or motions, and preparing for and conducting trial, including briefing extensive *in limine* motions and preparing other pre-trial filings—all ordinary and necessary expenditures of time during the course of this litigation.  (Holloway Decl. ¶ 8-11, Ex. 1.)

Throughout this litigation, and consistent with the highest professional standards, Cravath has endeavored to minimize its fees.  First, this matter was staffed leanly, with one partner (Mr. Gold), one senior associate (Ms. Holloway) and one mid-level associate (Mr. Soledad, and later, Mr. Valdes, who replaced him) comprising the core team.  (Holloway Decl. ¶ 12.)  Second, Cravath utilized the least expensive level of personnel to accomplish required

13

tasks, including, where appropriate, by assigning work to a first-year associate[6] and paralegals whenever possible.  (Holloway Decl. ¶ 13.)  As a result of that effort, Cravath achieved leverage of approximately 11 hours of associate time for every 1 hour of partner time expended in this matter.

Moreover, for purposes of this fee application, Cravath has exercised "billing judgment" and is therefore not seeking fees for any arguably inefficient or duplicative hours expended in this matter.

First, certain lawyers have been entirely excluded from the fee request.  For example, throughout the course of this case, first-year associate Megan Wall-Wolff contributed over 280 hours of substantive work, including by doing legal research, reviewing documents and briefs, and preparing for trial.  In addition, Rowan Wilson consulted on litigation strategy issues for a handful of hours over the course of the trial.  All of both lawyers' time has been excluded from this application.  (Holloway Decl. ¶ 17.)

Second, with respect to the remaining lawyers' entries, we have reviewed the records closely for arguably duplicative or redundant time that two or more attorneys spent on one task.  As indicated in a number of entries where "NO CHARGE" is noted on Exhibit 1 to the Holloway Declaration, the firm is not charging for over 200 hours of attorney and paralegal time based on that review.  That time includes, for example, hours Mr. Valdes spent getting up to speed when he replaced Mr. Soledad, and any time recorded by more than one attorney attending a deposition.  (Holloway Decl. ¶ 18.)

---

[6] As noted herein, we are not seeking fees for that first-year associate's work.  (See infra p. 14.)

Third, the firm is seeking fees only for the paralegals and staff listed above – Ms. Dorfman, Ms. Applegate, Mr. Stavrakis and Ms. Baird.  The firm is not seeking fees for over 150 hours of time spent by a number of additional timekeepers (paralegals, law clerks, and technological support staff) preparing the matter for trial.  All such hours have been excluded from this application. (Holloway Decl. ¶ 19.)

Particularly in light of these reductions, we respectfully submit that the hours sought to be reimbursed are reasonable and appropriate.  As set forth in the table below, multiplying those hours by the reasonable hourly rates requested herein yields a presumptively reasonable fee of $585,425.

| NAME | POSITION | HOURLY RATE | HOURS | PRESUMPTIVELY REASONABLE FEE |
|---|---|---|---|---|
| Stuart Gold | Partner | $525 | 116.30 | $61,057.50 |
| Jessica Holloway | Senior Associate | $400 | 693.00 | $277,200 |
| Hector Valdes | Associate | $350 | 328.80 | $115,080 |
| Gabriel Soledad | Associate | $300 | 236.75 | $71,025 |
| Elaine Baird | Courtroom Presentation Technical Specialist | $250 | 84.90 | $21,225 |
| Eleanor Dorfman | Paralegal | $125 | 156.20 | $19,525 |
| Constantinos Stavrakis | Paralegal | $125 | 129.80 | $16,225 |
| Meredith Applegate | Paralegal | $125 | 32.70 | $4,087.50 |
| **TOTAL** | | | | **$585,425.00** |

## C.    No Adjustment to the Presumptively Reasonable Fee is Necessary.

Once having determined the presumptively reasonable fee, the Court may consider whether any adjustment to that fee is warranted.  Mugavero, 2010 U.S. Dist. LEXIS 11210, at *10.  The Supreme Court has held that "the most critical factor" in determining whether to adjust a fee award "is the degree of success obtained."  Farrar v. Hobby, 506 U.S. 103, 114 (1992).

15

The circumstances of the present case make this analysis fairly straightforward. Plaintiff is not seeking any upward adjustment of fees, even though Plaintiff obtained a unanimous jury verdict in his favor on each and every one of the claims he asserted. The jury found that Defendants violated Plaintiff's constitutional rights in a number of ways, thus vindicating his claims and deterring future violations. Based on those findings, the jury awarded Mr. Robertson both $5,000 in compensatory damages and a substantial punitive damages award in the amount of $50,000 to punish Defendants for their outrageous conduct. In light of these circumstances, it cannot reasonably be argued that Plaintiff "failed" in any sense to achieve what he sought in this litigation. Therefore, the Court need not consider any downward adjustment, and Plaintiff should be awarded the full presumptively reasonable fee.

## III.   PLAINTIFF IS ALSO ENTITLED TO REASONABLE COSTS.

As the prevailing party, Plaintiff is also entitled to recover reasonable out-of-pocket costs necessarily incurred in litigating this matter. See LeBlanc Sternberg v. Fletcher, 143 F.3d 748, 763 (2d Cir. 1998) (abuse of discretion not to award plaintiff reasonable out-of-pocket costs); Reichman v. Bonsignore, Brignati & Mazzotta P.C., 818 F.2d 278, 283 (2d Cir. 1987) (prevailing plaintiff entitled to "those reasonable out-of-pocket expenses incurred by the attorney[s] and which are normally charged fee-paying clients"); Baird v. Boies, Schiller & Flexner LLP, 219 F. Supp. 2d 510, 518 (S.D.N.Y. 2002) (prevailing plaintiff entitled to reasonable costs). The costs incurred by Plaintiff's counsel are set forth in Exhibit 2 to the accompanying Holloway Declaration. The total costs sought, through today's date, are $38,439.58.[7] (Holloway Decl. ¶ 23.)

---

[7] The costs sought herein do not include certain costs that are taxable in favor of the prevailing party under Federal Rule of Civil Procedure 54(d)(1) and Local Civil Rule 54.1. Those costs will be the subject of a separate Bill of Costs directed to the Clerk of the Court.

## IV.   THE PRISONER LITIGATION REFORM ACT'S CAP ON ATTORNEYS' FEES SHOULD NOT APPLY IN THIS ACTION.

The Prisoner Litigation Reform Act ("PLRA") provides that "[i]n any action brought by a prisoner who is confined to any jail, prison or other correctional facility", the award of attorneys fees under Section 1988 shall be capped at 150% of the monetary judgment obtained.  42 U.S.C. § 1997e(d); see also Torres v. Walker, 356 F.3d 238, 242 (2d Cir. 2004).  At the time he filed this lawsuit in January 2007, Mr. Robertson was incarcerated at Altona Correctional Facility (see Defendants' Trial Exh. DX Y).  Therefore, this action nominally is within the scope of those covered by the PLRA.  See Perez v. Westchester County Dep't of Corr., 587 F.3d 143, 153-55 (2d Cir. 2009) (holding that the PLRA fee cap applied to an action brought by a plaintiff imprisoned at the time of filing but released prior to the successful conclusion of his lawsuit).  However, we respectfully submit that the application of the PLRA fee cap under the particular circumstances of this case would lead to a fundamentally unfair result.

Under the plain-meaning rule of statutory construction, a court ordinarily may rely on the literal, unambiguous language of a statute in determining its meaning.  However, this "rule" is "rather an axiom of experience than a rule of law, and does not preclude consideration of persuasive evidence if it exists".  Boston Sand Co. v. United States, 278 U.S. 41, 48 (1928).  Moreover, a court need not adhere to the plain meaning of a statute "when doing so would lead to an absurd result that is 'so gross as to shock the general moral or common sense'".  Morris v. Eversley, 343 F. Supp. 2d 234, 241 (S.D.N.Y. 2004) (quoting Crooks v. Harrelson, 282 U.S. 55, 60 (1930)).  Were the PLRA fee cap applied in this case, the instant matter would present just such a result.

At trial in this matter, Mr. Robertson contended "that he was subject to a deprivation of liberty in that the charges arising from his [April 15, 2006] arrest were a substantial factor in the decision to revoke his parole which resulted in his incarceration." (Trial Tr. at 552.) That contention was supported at trial by evidence that the April 24, 2006 arrest warrant for parole violations was issued the very day that the parole board received notification of Mr. Robertson's April 15, 2006 arrest and that Mr. Robertson was subsequently incarcerated for over a year as a result of that warrant. (Id. at 505.) The jury was specifically asked to render a verdict on whether Mr. Robertson proved by a preponderance of the evidence "that, as a result of his prosecution, he was deprived of his liberty after his arraignment", and the jury rendered a verdict of "Yes". (Id. at 567-68.) As such, the jury unambiguously concluded that Mr. Robertson's incarceration during the mid-2006 to May 2007 time period was the direct, proximate result of the wrongful conduct by Defendants that was the subject of this lawsuit.

Thus, the Defendants' wrongful conduct was the cause of the very condition (Mr. Robertson's incarceration) upon which Defendants might now rely to justify a cap on the attorneys' fees that may be awarded to Mr. Robertson. To apply the PLRA fee cap in these circumstances would truly constitute an absurd result not in keeping with the goals of the statute.[8] Indeed, to do so would empower future law enforcement officers unjustifiably to imprison an individual and, at the same time, to destroy that individual's ability to incentivize competent counsel to represent him in seeking redress for the wrongful conduct that put him in prison in the first place. That cannot be the result that Congress intended in passing the PLRA,

---

[8] The purpose of the PLRA was to curtail what Congress perceived to be inmate abuses of judicial process and to bring relief to a civil justice system overburdened by *frivolous* prisoner lawsuits. Ortiz v. McBride, 380 F.3d 649, 658 (2d Cir. 2007).

and we therefore urge the Court not to apply the PLRA's attorneys' fee cap under the circumstances of this case.

## V.     IF THE PLRA CAP DOES APPLY, PLAINTIFF SHOULD RECEIVE THE MAXIMUM AWARD ALLOWABLE PURSUANT TO THAT STATUTE.

If the Court were to determine that the PLRA's 150% cap on attorneys' fees is applicable here, Plaintiff should receive the maximum attorneys' fees award allowable thereunder.  In light of the showing in Sections I through III above regarding the reasonableness of Plaintiff's requested fee award, there would be no reason to award him any less than the $82,500 permitted under the PLRA.[9]

In addition to the 150% cap on attorneys' fees, the PLRA also provides that, when a money judgment is awarded, "a portion of the judgment (not to exceed 25 percent) shall be applied to satisfy the amount of attorneys' fees awarded against the defendant[s]".  42 U.S.C. § 1997e(d)(2).  Both the plain language of the statute and the case law interpreting it make clear that it is within the district court's discretion to "apply less than twenty-five percent of the judgment (as long as it applies some portion of the judgment) to satisfy the attorney's fee award".  Parker v. Conway, 581 F.3d 198, 205 (3d Cir. 2009); see also Boesing v. Hunter, 540 F.3d 886, 892 (8th Cir. 2008) (holding that the statute "clearly imposes a maximum, not a mandatory, percentage").  Accordingly, should the Court determine that the PLRA governs the fee award in this matter, we respectfully request that the Court apply only $1 of the judgment toward the attorneys' fees awarded, as numerous other courts have done in the exercise of their discretion.  See Morrison v. Davis, 88 F. Supp. 2d 799, 811 (S.D. Ohio 2000) ("In light of the facts of this case, the constitutional rights implicated, and the jury's clear signal that the

---

[9] Plaintiff obtained judgment in this matter in the amount of $55,000.  Applying the PLRA's 150% cap to that monetary award, Plaintiff would be entitled to an attorneys' fee of $82,500.

Defendants should be punished, the Court finds that a $ 1 assessment against the judgment is within its discretion under § 1997e(d)(2)."); see also Murphy v. Gilman, Nos. 03-145, 04-103, 2008 U.S. Dist. LEXIS 106928, at *5-6 (W.D. Mich. May 20, 2008) (applying $ 1 against the judgment); Siggers-El v. Barlow, 433 F. Supp. 2d 811, 822-23 (E.D. Mich. 2006) ("[R]equiring Plaintiff to pay $1 in attorney's fees out of the judgment is appropriate."); Sutton v. Smith, No. AW-98-2111, 2001 U.S. Dist. LEXIS 9011 (D. Md. June 26, 2001) (applying $ 1 against the judgment).  Applying $1 of the judgment here toward the fee award would result in a net fee award of $82,499 under the PLRA.

Nevertheless, for the reasons set forth in the preceding sections of this brief, we respectfully request that the Court hold the PLRA's fee caps inapplicable under the circumstances of this case and award Plaintiff the full reasonable attorneys' fee he seeks.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant him an award of attorneys' fees in the amount of $585,425 and costs in the amount of $38,439.58, plus fees and costs reasonably expended in preparing this motion and on any other post-trial litigation or appeals.

Dated:  March 18, 2010

CRAVATH, SWAINE & MOORE LLP,

by

Stuart W. Gold
Jessica R. Holloway
Hector J. Valdes

Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
(212) 474-1000
jholloway@cravath.com

*Attorneys for Plaintiff Dwayne Robertson*

21