UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

DWAYNE KINTE ROBERTSON

                              Plaintiff,

                  vs.

OFFICER MATTHEW SULLIVAN, Shield
#29723; OFFICER NILES PRINCE, Shield
#22353; and SERGEANT DIMITRI DAGLAS,
Shield #01647

                            Defendants.

07-CV-1416 (JG)(LB)

**ECF CASE**

# PLAINTIFF'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF HIS MOTION FOR ATTORNEYS' FEES AND COSTS

CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019

*Attorneys for Plaintiff Dwayne Kinte Robertson*

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................ ii

ARGUMENT ................................................................................................................... 1

I.     THE PRISONER LITIGATION REFORM ACT'S CAP ON ATTORNEYS' FEES SHOULD NOT APPLY IN THIS ACTION. ................................................................. 1

II.    IF THE PLRA CAP DOES APPLY, MR. ROBERTSON SHOULD RECEIVE THE MAXIMUM AWARD ALLOWABLE PURSUANT TO THAT STATUTE. ................... 2

III.   THE REQUESTED ATTORNEYS' FEES AND COSTS ARE REASONABLE. ........... 4

     A.     The Hourly Rates Sought are Reasonable. ......................................................... 4

           1.     Southern District Rates Should Apply. ...................................................... 4

           2.     Plaintiff's Counsel's Alleged Inexperience in Civil Rights Litigation Does Not Require Adjustment of the Rates Requested ....................................... 5

           3.     Plaintiff's Counsel's Initial Appointment as Pro Bono Counsel Does Not Support Further Reduction of Their Rates. .................................................. 6

     B.     The Number of Hours Expended Litigating This Case is Reasonable. ................ 7

     C.     The Staffing of This Case is Reasonable. .......................................................... 8

     D.     The Amount of Costs Sought is Reasonable. ..................................................... 10

CONCLUSION ............................................................................................................... 10

**TABLE OF AUTHORITIES**

**Cases**                                                                                            **Page(s)**

Adorno v. Port Auth. of N.Y. & N.J., No. 06 Civ. 593, 2010 U.S. Dist. LEXIS 14692
   (S.D.N.Y. Feb. 19, 2010)...........................................................................................5

Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 493 F.3d 110
   (2d Cir. 2007).............................................................................................................6

Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d 182
   (2d Cir. 2008).........................................................................................................4, 6

City of Riverside v. Rivera, 477 U.S. 561 (1986)...........................................................5

In re Agent Orange Prod. Liab. Litig., 818 F.2d 226 (2d Cir. 1987)...............................4

Kahle v. Leonard, 563 F.3d 736 (8th Cir. 2009)..............................................................3

LeBlanc Sternberg v. Fletcher, 143 F.3d 748 (2d Cir. 1998) ......................................10

Livingston v. Lee, No. 9:04-CV-00607, 2007 U.S. Dist. LEXIS 92418
   (N.D.N.Y. Dec. 17, 2007)...........................................................................................4

McGrath v. Toys "R" Us, Inc., 409 F.3d 513 (2d Cir. 2005) ..........................................5

Morrison v. Davis, 88 F. Supp. 2d 799 (S.D. Ohio 2000) ..............................................3

Mugavero v. Arms Acres, Inc., 03-CV-5724, 2010 U.S. Dist. LEXIS 11210
   (S.D.N.Y. Feb. 9, 2010)............................................................................................10

Murphy v. Gilman, Nos. 03-145, 04-103, 2008 U.S. Dist. LEXIS 106928
   (W.D. Mich. May 20, 2008) .......................................................................................2

Perez v. Westchester County Dep't of Corr., 587 F.3d 143 (2d Cir. 2009)....................1

Quarantino v. Tiffany & Co., 166 F.3d 422 (2d Cir. 1999)............................................6

Reyes v. Keane, 90 F.3d 676 (2d Cir. 1996).....................................................................1

Robinson v. City of New York, 05 Civ. 9545, 2009 U.S. Dist. LEXIS 89981
   (S.D.N.Y. Sept. 29, 2009) ........................................................................................10

Rozell v. Ross-Holst, 576 F. Supp. 2d 527 (S.D.N.Y. 2008) ..........................................5

Siggers-El v. Barlow, 433 F. Supp. 2d 811 (E.D. Mich. 2006).......................................2

Sutton v. Smith, No. AW-98-2111, 2001 U.S. Dist. LEXIS 9011 (D. Md. June 26, 2001)...........3

Teamsters Local 814 Welfare Fund v. Dahill Moving & Storage Co., 545 F. Supp. 2d 260
(E.D.N.Y. 2008)......................................................................................................4

Vilkhu v. City of New York, 06-CV-2095, 2009 U.S. Dist. LEXIS 73696
(E.D.N.Y. June 25, 2009) ...................................................................................8, 10


**Statutes & Rules**

42 U.S.C. § 1997e ...............................................................................................1, 2

Plaintiff Dwayne K. Robertson ("Plaintiff") respectfully submits this reply memorandum in further support of his Motion for Attorneys' Fees and Costs.

## ARGUMENT

## I.  THE PRISONER LITIGATION REFORM ACT'S CAP ON ATTORNEYS' FEES SHOULD NOT APPLY IN THIS ACTION.

As we demonstrated in our opening brief, the jury found that but for Defendants wrongful conduct, Mr. Robertson would not have been in prison when he filed this action.  (Pl's Br. at 17-19.)  For a defendant to benefit from its wrongful conduct by drastically reducing the amount of attorneys' fees to which a plaintiff may be entitled cannot be the intended consequence of the Prisoner Litigation Reform Act ("PLRA").  Therefore, the PLRA cap on attorneys' fees should not apply in this action.  42 U.S.C. § 1997e(d).  Defendants primarily rely on Perez v. Westchester County Department of Corrections, 587 F.3d 143 (2d Cir. 2009), asserting that the Perez court "expressly considered and rejected" Plaintiff's argument.  (Defs' Br. at 2.)  Perez did nothing remotely like that.  The Perez court rejected the argument that "the fee cap applies only to the prisoners who are still incarcerated at the time of their case's resolution."  587 F.3d at 153.  The facts before that court had nothing to do with whether the PLRA applies when the defendants' conduct caused the plaintiff's incarceration in the first place.

Indeed, Plaintiff's situation is the opposite of that imagined by Congress in enacting the PLRA, which primarily was designed to disincentivize the filing of frivolous suits regarding prison conditions.  See Reyes v. Keane, 90 F.3d 676, 678 n.1 (2d Cir. 1996).  Mr. Robertson did not file this suit because he had too much "time on his hands", Perez, 587 F.3d at 155, but rather did so precisely because Defendants' wrongful actions resulted in his incarceration.

## II.     IF THE PLRA CAP DOES APPLY, MR. ROBERTSON SHOULD RECEIVE THE MAXIMUM AWARD ALLOWABLE PURSUANT TO THAT STATUTE.

Defendants' assertion that Plaintiff should receive an attorneys' fee award of only 100% of the money judgment in his favor—rather than the 150% permissible under the PLRA—misconstrues the nature of the PLRA fee cap.  (Defs' Br. at 4-5.)  In his opening brief, Plaintiff demonstrated the reasonableness of the $623,864.58 fee award sought in this matter.[1]  (Pl's Br. at 3-16.)  Indeed, even Defendants concede that, if the PLRA cap did not apply, an award of $127,013.30 would be reasonable—an amount in excess of the 150% cap ($82,500).  (Defs' Br. at 22.)  In light of that concession, Defendants offer no compelling reason as to why the fee award in this case should be anything less than the full amount permitted pursuant to the PLRA, which simply establishes a limit on an otherwise reasonable fee award.[2]

Moreover, Defendants' rationale as to why 25% of the judgment should be offset against the fee award is not supported.  There are no fixed criteria for determining the percentage offset to apply and the decision as to this amount (between $1 and 25%) is firmly within a court's discretion.  See, e.g., Murphy v. Gilman, Nos. 03-145, 04-103, 2008 U.S. Dist. LEXIS 106928, at *5 (W.D. Mich. May 20, 2008); Siggers-El v. Barlow, 433 F. Supp. 2d 811, 822 (E.D. Mich. 2006).  Defendants cite no authority to suggest that the factors upon which they rely—

---

[1] Plaintiff also reserved his rights to seek additional fees and costs for his counsel's work on the instant fee application, any other post-trial litigation and any appeals in this matter. (Pl's Br. at 2 n.1.)  Defendants' assertion that such fees would be "inappropriate" (Defs' Br. at 7 n.6) is confusing, since each of the cases they cite supports Plaintiff's entitlement to such fees.

[2] We do not address Defendants' assertion that fees under the PLRA are capped at $75/hour, since applying that rate to the hours claimed would result in an award in excess of the 150% maximum described above.  Incidentally, however, the currently applicable CJA rate in the Eastern District of New York is $125, not $75 per hour, see http://www.nyed.uscourts.gov/ pub/docs/courtforms/CJA-Rates.pdf, and the PLRA caps hourly rates at 150% of the CJA rate, or $187.50.  See 42 U.S.C. § 1997e(d)(3).

2

many of which are already subsumed in the initial analysis of a reasonable fee—have any bearing on the question of the appropriate offset. (Defs' Br. at 5.) The Eighth Circuit has looked to a series of factors in this area in <u>Kahle v. Leonard</u>, 563 F.3d 736, 743 (8th Cir. 2009): (1) the degree of the defendants' culpability; (2) the defendants' ability to pay the fee award; (3) the deterrence effect of the fee award; and (4) the relative merits of the parties' positions. Here, those factors would favor a minimal allocation of the judgment to the attorneys' fee award.

Further, even if the criteria Defendants cite were relevant to determining the offset, they do not compel the conclusion that Defendants advocate. First, Defendants claim this case was simple. In fact, as explained in our opening brief, the facts of this case made it extremely difficult to win. (Pl's Br. at 8-9.) Second, Defendants incredibly suggest that Plaintiff's victory on every claim asserted and the resulting award of $5,000 in compensatory and $50,000 in punitive damages, were somehow insubstantial. But Defendants ignore that in two of the four cases Plaintiff cited where the court required only a $1 offset, the damages obtained were far less than those obtained here. <u>See</u> <u>Morrison v. Davis</u>, 88 F. Supp. 2d 799, 801, 811 (S.D. Ohio 2000) (noting, upon award of $12,000 compensatory and $3,000 punitive damages, "the jury's clear signal that the Defendants should be punished" ); <u>Sutton v. Smith</u>, No. AW-98-2111, 2001 U.S. Dist. LEXIS 9011 (D. Md. June 26, 2001) (total of $19,000 in compensatory and punitive damages). Third, Defendants point to the fiscal condition of the City of New York. Even if that were an appropriate consideration in determining the fee offset—and it is not—Defendants themselves note that the City has not even made a determination whether it will indemnify the Defendants in this case. (Defs' Br. at 6 n.3.) We respectfully submit that Defendants and the City cannot have it both ways.

Finally, should the Court decide that an offset greater than $1 is appropriate, we submit that it should apply only to the compensatory damages portion of the judgment. The jury found that Defendants stopped and arrested Mr. Robertson without probable cause, beat him with a baton to the head and fabricated evidence that resulted in his incarceration for over a year. Based on those findings, the jury awarded $50,000 in punitive damages against all Defendants— a clear signal of the jury's view that Defendants should be punished. As the court noted in Livingston v. Lee, to now reduce the punitive damages award by applying a fee offset would lead to an "incongruous" result, "effectively reduc[ing] the punitive effect" of the award the jury deemed appropriate. No. 9:04-CV-00607, 2007 U.S. Dist. LEXIS 92418, at *5-6 (N.D.N.Y. Dec. 17, 2007). Accordingly, if the Court deems it appropriate to apply a substantial offset, it should be against only the $5,000 compensatory award (up to a maximum of $1,250).

## III. THE REQUESTED ATTORNEYS' FEES AND COSTS ARE REASONABLE.

### A. The Hourly Rates Sought are Reasonable.

#### 1. Southern District Rates Should Apply.

District courts may utilize out-of-district rates if a reasonable, paying client would pay those rates to have the case litigated effectively. See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d 182, 191 (2d Cir. 2008); Teamsters Local 814 Welfare Fund v. Dahill Moving & Storage Co., 545 F. Supp. 2d 260, 265-66 (E.D.N.Y. 2008). This Court saw fit to appoint a firm located in the Southern District of New York to litigate this difficult case. Indeed, prior to Cravath's appointment, Plaintiff approached at least one firm in the Eastern District of New York, and they declined to take his case. (Holloway Decl. ¶2); see In re Agent Orange Prod. Liab. Litig., 818 F.2d 226, 232 (2d Cir. 1987) (noting that the presumption against employing out-of-district rates can be overcome by demonstrating that local counsel were unwilling or unable to take the case). Plaintiff's counsel brought their

4

talent, skill and experience to bear, and achieved an excellent result for their client.   They should be compensated accordingly.

Moreover, Defendants' assertion that the hourly rates Plaintiff seeks "have not even been awarded in the Southern District to seasoned civil rights counsel" is without basis, especially given that nearly all of the authorities Defendants offer are six or seven years old. (See Defs' Br. at 11.)  As already demonstrated, the rates sought are indeed in line with current market rates in the S.D.N.Y.  (Pl's Br. at 5-8); see, e.g., Rozell v. Ross-Holst, 576 F. Supp. 2d 527, 545-46 (S.D.N.Y. 2008) (applying hourly rates of up to $600 for attorneys, $125 for paralegals); Adorno v. Port Auth. of N.Y. & N.J., No. 06 Civ. 593, 2010 U.S. Dist. LEXIS 14692, at *12 n.2 (S.D.N.Y. Feb. 19, 2010) (applying hourly rates of up to $550).

### 2.   Plaintiff's Counsel's Alleged Inexperience in Civil Rights Litigation Does Not Require Adjustment of the Rates Requested.

Defendants' argument that Plaintiff's counsel should receive reduced rates because they are not specialists in civil rights litigation is unpersuasive.  (Defs' Br. at 11.)  In a case that turned on starkly divergent factual stories, Plaintiff needed excellent trial lawyers more than he needed civil rights specialists.  The real hurdle here was how to test the veracity of the Defendants and effectively persuade the jury they had to believe Plaintiff's version.  Moreover, to the extent Defendants point to the lack of general trial experience of Ms. Holloway and Mr. Valdes, the bottom line is they resoundingly beat the more "experienced" trial team from the City.  A paying client would clearly be satisfied paying their requested rate.[3]

---

[3]  Defendants cite to McGrath v. Toys "R" Us, Inc., 409 F.3d 513 (2d Cir. 2005), for the proposition that most civil rights litigation is not ground-breaking and "will warrant fee awards only if a plaintiff recovers some significant measure of damages or other meaningful relief." (Defs' Br. at 9.)  McGrath dealt with the issue of attorneys fees in the context of nominal damages awards.  If applied outside that context, as Defendants appear to urge, McGrath represents an abject misstatement of the applicable law.  See City of Riverside v. Rivera, 477

5

### 3.   Plaintiff's Counsel's Initial Appointment as Pro Bono Counsel Does Not Support Further Reduction of Their Rates.

Defendants misread <u>Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany</u>, 493 F.3d 110 (2d Cir. 2007), and they cite a version of the opinion that was superseded by a subsequent and substantive amendment.  (Defs' Br. at 12-13); <u>see</u> <u>Arbor Hill</u>, 522 F.3d 182 (2d Cir. 2008).  In the amended opinion, the Court of Appeals elaborated on a footnote in which it made clear that "[o]ur decision today in no way suggests that attorneys from non-profit organizations or attorneys from private law firms engaged in *pro bono* work are excluded from the usual approach to determining attorneys' fees".  522 F.3d at 184 n.2.  The amended opinion also explained that the *pro bono* nature of the work involved could be relevant in that it might "justify compensating an attorney at a rate lower than his or her customary rate for a different type of practice"—*i.e.*, the much higher rates that Cravath typically charges its paying corporate clients.  <u>Id.</u>  Because Plaintiff's counsel has already discounted its customary rates by approximately 40% to account for the nature of the work here, no further reduction is justified or required.  (Pl's Br. at 6 n.3.)[4]

If courts are going to reduce the fee award rates even further for firms able to command high three-figure hourly rates from paying clients on the basis that the matter was

---

U.S. 561, 575 (1986) ("Because damages awards do not reflect fully the public benefit advanced by civil rights litigation, Congress did not intend for fees in civil rights cases, unlike most private law cases, to depend on obtaining substantial monetary relief."); <u>Quarantino v. Tiffany & Co.</u>, 166 F.3d 422, 426 (2d Cir. 1999) ("The pubic interest in private civil rights enforcement is not limited to those cases that push the legal envelope . . . Congress meant reasonable attorney's fees to be available to the private attorneys general who enforce the law . . . not only to those whose cases make new law.").  In any event, a recovery of $55,000 is by any standard "significant".

[4] Incidentally, contrary to Defendants' suggestion (Defs' Br. at 12-13), the relevant analysis is not what a destitute *pro bono* client like Mr. Robertson would expect to pay, but rather what a reasonable, *paying* client would expect to pay for similar services.  <u>Arbor Hill</u>, 522 F.3d at 190.

taken on a *pro bono* basis, it will become more difficult to incent such firms to take these cases. The availability of significant attorneys' fees when an attorney produces a victory will be helpful in convincing firms to handle several of these cases at a time, risking no fee in some of them. Thus, it is counterproductive to further reduce Cravath's already deeply discounted rates.

**B.     The Number of Hours Expended Litigating This Case is Reasonable.**

Contrary to Defendants' repeated assertions, this was in fact an extremely difficult case.  Plaintiff's counsel confronted a set of facts that would make victory near impossible, and it took excellent trial lawyers who would use their time and creativity to tell Mr. Robertson's story in a way that would help the jury to get past both Mr. Robertson's background and the testimony of three police officers with generally spotless records.  Despite these hurdles, Plaintiff won every claim he advanced and received significant punitive damages.[5]

The efforts Plaintiff's counsel undertook to achieve this result—which included, among other things, taking and defending various depositions, briefing and arguing discovery disputes and motions in limine, reviewing several hundred pages of detailed medical records and arrest paperwork (many handwritten) and preparing for and conducting trial—are detailed in the Holloway Declaration submitted with Plaintiff's opening brief.[6]  (Holloway Decl. ¶¶ 8-11.)

Defendants take issue with the amount of research that Plaintiff undertook in order to litigate this case effectively.  Even where counsel is intimately familiar with a particular

---

[5] Defendants' reference to the Court's comment about the case being "a little overtried on both sides" is curious given that the Court made this comment in response to an argument by Defendants that it deemed not "rational".  (3/3/10 Trial. Tr. at 471-72.)

[6] Defendants' citation of Plaintiff's time records is rife with errors.  For example, Defendants misleadingly imply that Mr. Valdes billed 44.5 hours during a two-day period while reading various case background materials.  (Defs' Br. at 20.)  In fact, those hours were billed over the course of several days, and a number of them were specifically excluded from the hours for which Plaintiff's counsel seeks reimbursement.  (See Holloway Decl. Ex. 1, at 16.)

area of the law, virtually all litigation requires legal research. That Plaintiff's counsel diligently educated itself on the current state of the law and its application to the facts does not justify an arbitrary 50% reduction of all hours spent on legal research, as Defendants suggest. (Defs' Br. at 19-20.)

Finally, Plaintiff's counsel accounted for these hours of work in detailed billing records which Defendants' counsel themselves described as "detailed and lengthy" when they sought an extension to respond to our fee application (see Defs' 3/23/10 letter to the Court at 1). The notations of "various" in these records, followed by an itemized list of tasks, is sufficient to indicate the hours of work performed in detail. See Vilkhu v. City of New York, 06-CV-2095, 2009 U.S. Dist. LEXIS 73696, at *41 (E.D.N.Y. June 25, 2009) (upholding the acceptability of billing entries similar to those submitted here). Thus, the nature of the records does not warrant a reduction in hours billed, particularly in light of the voluntary reductions already taken.

**C.    The Staffing of This Case is Reasonable.**

Defendants assert that this case was overstaffed because it was litigated by two lead attorneys and one supervisory attorney.[7] However, Defendants' counsel mirrored this staffing model precisely: Mr. Harvis and Mr. Brooks acted as the lead attorneys, while Ms. Seligman Weiss acted in a supervisory capacity.[8] Defendants' argument that Plaintiff overstaffed this matter—when they follow the identical staffing model—is utterly without merit.

_____

[7] Mr. Valdes began working on the case when Mr. Soledad left the firm, so no more than three attorneys whose fees are requested worked on the case at any one time. Two other attorneys contributed to the matter but their work is not included in the request for fees. Defendants assert that Mr. Gold's fees should be excluded entirely because he played a supervisory role. (Defs' Br. at 15-16.) Yet had Mr. Gold played more than a supervisory role, the attorneys' fees sought would have been much higher.

[8] Ms. Seligman Weiss attended and spoke at the pretrial conference on February 19, 2010, as well as the deposition of Niles Prince on December 14, 2009.

Nor do Defendants offer any evidence that the rates or hours attributed to work done by paralegals should be reduced, other than to claim that both are "excessive". (Defs' Br. at 16-17.)  Plaintiff's counsel has already exercised considerable billing judgment in its drastic reductions of the rates and hours for which it seeks fees.[9]  Defendants' assertion that the "use of three paralegals is patently excessive" similarly fails (Defs' Br. at 16.)  Whether the work done by paralegals in this matter was distributed among three individuals or assigned to one, the hours are the same, as is the total fee requested.  Moreover, contrary to Defendants' assertions, no paralegals attended or billed time for court conferences or depositions.  (Holloway Decl., Ex. 1 at 19-29.)  Ms. Dorfman is the only paralegal to bill time at trial.[10]  Even if only pre-trial work were compensable, Defendants offer no support for their assertion that the hours expended by Mr. Stavrakis are grossly excessive (Defs' Br. at 17.)

Finally, Defendants object to Plaintiff's purported use of "cutting-edge" technology (*i.e.*, a laptop computer) and the services of a technician (Ms. Baird) during trial.  Though Defendants themselves made use of Plaintiff's equipment to display some of their documents, they now claim that such technology was unnecessary.  When technology is used in the courtroom, a technician's presence is necessary to deal with inevitable malfunctions.  Videotaped depositions have become standard practice in litigation, and their display at trial here necessitated the presence of Ms. Baird.  As such, her fees should reasonably be included in the fee award.

---

[9] As Plaintiff noted in his opening brief, the hourly rates for paralegals have already been reduced by 30%, and over 150 hours of paralegal and other support staff time have been excluded from Plaintiff's fee request.  (Holloway Decl. ¶¶ 13, 19.)

[10] Defendants also had a paralegal present at trial.  (3/1/10 Trial Tr. at 27-28.)

D.    **The Amount of Costs Sought is Reasonable.**

Defendants assert without citing any case law or evidence that Plaintiff's costs are unreasonable. (Defs' Br. at 21.) This argument is without merit. Money necessarily spent on meals, transportation, couriers, printing, copying and computerized legal research are all reimbursable. See, e.g., Mugavero v. Arms Acres, Inc., 03-CV-5724, 2010 U.S. Dist. LEXIS 11210, at *37-38 (S.D.N.Y. Feb. 9, 2010); Robinson v. City of New York, 05 Civ. 9545, 2009 U.S. Dist. LEXIS 89981, at *34-40 (S.D.N.Y. Sept. 29, 2009); Vilkhu, 2009 U.S. Dist. LEXIS 73696, at *64-65. Accordingly, Plaintiff is entitled to reimbursement for all of his attorneys' reasonable expenses. See LeBlanc Sternberg v. Fletcher, 143 F.3d 748, 763 (2d Cir. 1998).

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant him an award of attorneys' fees in the amount of $585,425 and costs in the amount of $38,439.58, plus fees and costs reasonably expended in briefing this motion and on any other post-trial litigation or appeals.

Dated:  April 12, 2010

CRAVATH, SWAINE & MOORE LLP,

by _____

Stuart W. Gold
Jessica R. Holloway
Hector J. Valdes

Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
(212) 474-1000
jholloway@cravath.com

*Attorneys for Plaintiff Dwayne Robertson*

10